SAMUEL E. PENTECOST CONSTRUCTION COMPANY
*v.* O'DONNELL.

[No. 16,633.  Filed March 6, 1942.  Rehearing denied May 26, 1942.  Transfer denied September 18, 1942.]

48

*James L. Murray* and *James J. Stewart,* both of Indianapolis, for appellant.

*Ruckelshaus & Ruckelshaus,* of Indianapolis, for appellee.

DeVoss, C. J.—Appellee, Clarence W. O'Donnell, instituted this action in the trial court to recover from appellant and the R. C. Mahon Company damages for personal injuries sustained by appellee, alleged to be .due to the negligence of appellant and said R. C. Mahon Company. There was a trial by jury and a verdict returned against appellant, awarding plaintiff (appellee) damages in the sum of $25,000.00. Upon the overruling of defendant's (appellant's) motion for a new trial, judgment was rendered upon the verdict for said sum against appellant, and from this judgment, appellant prosecutes this appeal.

The complaint was in one paragraph and alleged that prior to the month of August, 1936, appellant entered into a contract with O'Neil Construction Company whereby appellant agreed to erect certain steel work in the construction of a general motors plant to be erected in the City of Indianapolis. During the construction of the building, appellee was also employed by the O'Neil Construction Company to assist the O'Neil Construction Company in the erection thereof, but that appellee was not employed at that time by appellant.

On the 29th day of August, 1936, appellee was instructed to clean off the steel girders of such building. The defendants had completed the erection of such steel and informed appellee of such completion. On or about such date, the appellee, together with certain other employees, walked along a portion of said steel girders on the second floor of such structure and one of such girders had been permitted to remain without a bolt or attachment which would hold the same firmly in place, and when appellee stepped upon such steel girder, the same tilted downward and caused appellee to be hurled below about thirty feet to the concrete floor of such building. The damages thereby inflicted on appellee were the direct and proximate result of appellant's negligence in carelessly failing to fasten such girder with a bolt or attachment sufficient to hold such steel girder in place and in permitting appellee to use such steel girder at a time when appellant knew or should have known that the girder in question was unsafe for use by appellee. By reason of said negligence, appellee suffered serious, permanent injuries in the double fracture of the pelvic bone, broken hip, bone in elbow broken and protruded through the flash, his wrist broken and crushed and he suffered certain ruptures in internal organs causing leakage from kidneys and other organs of his body. He was required to submit to surgical operations and was confined to the hospital for many months. He is maimed and crippled permanently and is unable to work and has incurred a large indebtedness for hospitalization and medical attention.

To this complaint the appellant filed an answer in two paragraphs: the first in general denial and the second being an affirmative paragraph which alleged that at the date of the injury complained of, appellee was an employee of the W. E. O'Neil Construction Company,

and that such injury arose out of and in the course of such employment, and that thereafter appellee accepted the jurisdiction of the Industrial Board of Indiana and accepted a settlement for his claim for injuries by entering into an agreement with his employer for payment of compensation, and that on the 5th day of April, 1937, said appellee and his employer, W. E. O'Neil Construction Company, entered into a supplemental agreement for the final settlement of his claim. A copy of each of said agreements is attached to the second paragraph of answer. It is further alleged that the money set out in the agreements has been accepted by appellee in payment of compensation for said injuries.

By way of reply to appellant's second paragraph of answer, appellee alleges that he did receive certain payments from the Hartford Accident and Indemnity Company, insurance carrier of W. E. O'Neil Construction Company, but that such payments were made under an oral agreement as advancements but not as compensation, and that such oral agreement was reduced to writing thereafter and signed by appellee and said insurer. A copy of said agreement is attached to such reply and made a part thereof.

Upon the issues joined, the cause was submitted to the jury, resulting as hereinabove set forth. Appellant filed a motion for a new trial which was overruled by the court and this appeal followed.

The only error assigned in this court and relied upon for reversal is: "The trial court erred in overruling appellant's motion for a new trial."

The motion for a new trial contained the following specific reasons:

"(1). The verdict of the jury is not sustained by sufficient evidence.

(2). The verdict of the jury is contrary to law.

(3). The damages assessed by the jury are excessive.

(4). The court erred in the trial of said cause in refusing to direct a verdict for the defendant at the close of all the evidence.

(5). The court erred in the trial of said cause in permitting plaintiff's witness, Lucille O'Donnell, to answer a certain question over the defendant's objection. (Set out in full under proposition V following.)

(6). The court further erred in the trial of said cause in giving to the jury of its own motion each of the court's instructions, numbered, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15, and the court erred in giving each of said instructions separately and severally.

(7). The court further erred in the trial of said cause in giving to the jury on motion of the plaintiff, plaintiff's instructions numbered 2, 5, 6, 7, and 8, and the court erred in giving each of said instructions separately and severally.

(8). The court further erred in the trial of said cause in refusing to give to the jury each of the instructions tendered and requested by the defendant, numbered, 2, 3, 5, 6, 7, 9, 10, 12, 13, and 14, and the court erred in not giving each of said instructions separately and severally."

Appellant waives contention of error as applied to the giving of instructions by the court on its own motion as set out in cause number 6 in the motion for a new trial, except as to instruction number 10 so given by the court.

Appellant also waived contention of error as applied to the giving of instructions numbers 5 and 7, by the court at the request of appellee as set out in cause number seven in the motion for a new trial and also waives contention of error in the refusal of the court to give instructions numbered 2 requested by appellant as set out in cause number 8, of said motion for a new trial.

It is contended by appellant, first, that there is no liability against appellant for the reason there was no negligence on their part; that since the steel work was not completed at the time of the accident, any work done by another contractor was at his own risk; that the relationship of O'Donnell and appellant was that of a permissive licensee under which the only duty of appellant was not to wilfully or wantonly injure appellee. Second, if anyone was negligent it was O'Donnell's employer who directed him to go upon the steel work, and, third, appellee had made an election to accept compensation under the Workmen's Compensation law and is thereby precluded from proceeding against appellant.

In ascertaining the relationship of appellee to appellant in the circumstances under consideration, it will be necessary to consider the evidence introduced relative thereto.

The record discloses that W. E. O'Neil Construction Company was the general contractor for the erection of a building for the Chevrolet Body Plant in Indianapolis. Appellant was the subcontractor from said W. E. O'Neil Construction Company for the erection of the structural steel. The buildings to be erected were long buildings and irregular in shape; and in the erection of the steel, angle irons or stiffeners were used in between the I beams as braces and, after the riveting of the I beams and purlins was completed, the angle irons or stiffeners were bolted. James Gilroy was the supervising architect on the construction and, as stated by him, his job was to see that the contractors got the work done as soon as possible and in accordance with the plans and specifications, and his word was final. As a part of his duties said James Gilroy directed the O'Neil Construction Company to wash the steel and it

was while washing the steel as an employee for the O'Neil Construction Company that appellee was injured.

In discussing the status of licensees, both permissive and licensees by invitation, this court, in the case of *Cleveland, etc., R. Co. v. Means* (1915), 59 Ind. App. 383, 393, 394, 108 N. E. 375, spoke as follows:

"On this subject the courts of different jurisdictions have expressed themselves as follows: A licensee by permission is one who, for his own convenience, curiosity or entertainment, goes upon the premises of another by his (the owner or occupant's) permission or sufferance. Such a person takes the premises as he finds them as to any defects therein, and the owner is not liable for any injuries resulting to him owing to defects in the conditions of the premises. He is not liable for *passive* negligence."

Quoting further from the same case:

"A licensee by invitation is a person who goes upon the lands of another with the express or implied invitation of the owner or occupant, either to transact business with such owner, or occupant, or to do some act which is of advantage to him (the owner or occupant) or of mutual advantage to both licensee and the owner or occupant of the premises."

See also *Thistlewaite* v. *Heck* (1921), 75 Ind. App. 359, 128 N. E. 611.

In "Restatement of the Law of Torts," § 384, p. 1024, the rule is also stated as follows:

"One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to the same liability, and enjoys the same immunity from liability, as though he were the possessor of the land, for bodily harm caused to others within and without the land, while the work is in his charge, by the dangerous character of the structure or other conditions."

In passing upon a question similar to that involved herein, in the case of *Fidelity & Casualty Co.* v. *Llewellyn Iron Works* (1919), 42 Cal. App. 766, 772, 184 P. 402, the Appellate Court of California said:

"Appellant's next contention is that decedent was not its employee, but was the employee of an independent contractor, and that being such, he was a trespasser in the shaft at the time of the accident, or at the most a mere licensee, to whom defendant owed no duty, except that of not wantonly injuring him. Confronted with the record before us, we think this contention without merit. When we take into consideration the fact that in the construction of a modern business block—and the Broadway Department Store building of Los Angeles is such a block—that there are required, including many others, such artisans as plasterers, carpenters, glass-men, sheet-metal men, and interior-finish men, all of whom, according to the evidence here, had necessary work to do on the south wall of this building, and were under contract to do such work, we are at a loss to understand by what line of reasoning a conclusion can be arrived at that the employees of the defendant (also just as essential in their part of the construction of such a block) were doing a more necessary work, and a work of such importance that the other contractors and their employees could be treated as trespassers."

See also *Lisle* v. *Anderson* (1916), 61 Okla. 68, 159 P. 278.

"To a licensee on his premises, *by invitation*, the master or occupant assumes an obligation of making and keeping such premises in a reasonably safe condition, suitable for the use of such licensee while he remains thereon, under such invitation, and for a breach of this obligation he is liable in damages to a person injured thereby, who is himself free from contributory negligence." *Cleveland, etc., R. Co.* v. *Means, supra.*

In the case of *Cudahy Packing Co.* v. *Luyben* (1926), 9 F. (2d) 32, 34, the court stated:

"It is urged that the packing company owed the plaintiff only the duty not wantonly to injure him. This involves a definition of terms. It is clearly negligence on the part of any one, whether stranger, invitor, or employer, with knowledge of what is to be done, to maintain a place which is not reasonably safe, in view of the activities and operations therein mutually contemplated."

In the case of *Rush* v. *Hunziker* (1940), 216 Ind. 529, 533, 536, 24 N. E. (2d) 931, our Supreme Court said:

"Appellee was an invited guest, and was on the premises by invitation from one who had authority to invite her. She was therefore rightfully upon the porch when she received her injuries."
"So we conclude upon the principles of law laid down . . . that there was a duty upon appellant to use reasonable care for appellee's safety, and all others, lawfully upon the premises, and if by his negligence, appellee was injured, without fault on her part, appellant would be liable."

Appellant in the present case was a subcontractor. As such he had no superior rights to the general contractor and his employees. Such employees were not trespassers on the premises, neither were they permissive licensees as to appellant. They had as much right on the premises and structure for the performance of their labor as appellant, and as such appellant owed a duty to them to use reasonable care to keep and maintain the premises, and the structure where appellee was required to work, in a safe condition.

It is disclosed by the evidence that the washing of the steel structure had been going on for at least three

days before the accident. Some of this washing was done after working hours and on the Saturday afternoon when the accident occurred, none of the craftsmen were working. It is apparent to us that appellant, having been engaged in the steel structure building for at least thirteen years should have known, or could have learned, that other workmen were required to be upon the structure, including the architect's superintendent and others, and being charged, with such knowledge, any negligence on its part which was the proximate cause of injury would be actionable, in the absence of contributory negligence.

Appellee had worked on the building in question for about six months and was laid off, then returned to work on the plant a week or ten days prior to the accident. On August 29, 1936, there were about two hundred feet at the southwest corner of the last section of the building where the steel had not been put in place. He had not washed steel on this building prior to the date in question, but had seen other men washing while the steel men were working on other sections. He was working about forty or fifty feet east of the platform where the riveters had worked the day before. There was steel erected west of that point but not riveted. There was no sign of any kind and he was instructed to wash up to the riveting machine and was informed by his foreman that the structure was completed that far. He was not warned not to step on the angle irons or stiffeners. He was pulling up the hose and placed his right foot on the angle iron to pull and the angle. iron suddenly tilted and threw him to the floor below, a distance of approximately thirty (30) feet.

The evidence disclosed that in walking along the beams it was a customary practice for workmen to brace themselves on any substantial part of the build-

ing. The evidence further disclosed that after the accident, one of the angle irons directly over the place appellee struck the floor was partly turned from its normal position. The angle iron was loose and could readily be turned. The nut at the end of the bolt could be turned by hand. An inspection of the other angle irons to the west and to the east of this location disclosed that the angle irons were all in position and none of them could be turned. Twenty or thirty angle irons were examined and none could be turned except the one directly over appellee, which was loose.

In considering the question as to whether or not the verdict of the jury is sustained by sufficient evidence, we are guided by the established rule that only the evidence favorable to appellee will be considered. *Levin* v. *Moll* (1933), 98 Ind. App. 1, 186 N. E. 905; *General Motors Truck Co.* v. *Perry* (1934), 99 Ind. App. 357, 192 N. E. 720.

Upon consideration of the evidence we conclude that there was sufficient evidence submitted to sustain the judgment of the court, and that a further review thereof would unduly extend the opinion.

Appellant contends that the damages as fixed by the jury are excessive. Before that contention can be maintained, it would be necessary for this court to conclude that the amount so fixed by the jury is so large that it cannot be explained on any reasonable hypothesis other than from prejudice, partiality or corruption or that some other improper element was taken into consideration. *Indianapolis, etc., Traction Co.* v. *Roach* (1922), 192 Ind. 384, 135 N. E. 334; *Citizens Telephone Co.* v. *Prickett* (1920), 189 Ind. 141, 125 N. E. 193.

In the case of *Barry* v. *Edmunds* (1886), 116 U. S. 550, 565, 6 S. Ct. 501, 29 L. Ed. 729, the court stated:

"In no case is it permissible for the court to substitute itself for the jury, and compel a compliance on the part of the latter with its own view of the facts in evidence, as the standard and measure of that justice, which the jury itself is the appointed constitutional tribunal to award."

At the time of the accident, appellee was approximately thirty-five years of age and had been employed by the Pennsylvania Railroad Company until 1924, and at that time had twelve years seniority with said railroad company. From the accident involved herein he suffered a compound dislocation of the left elbow, a comminuted fracture of the left wrist, a fracture of the neck of the femur bone, ordinarily termed a broken hip, a multiple fracture of the pelvis and a rupture of the urethra. He was placed in a cast where he remained for three months. Absorption of the head of the femur had taken place causing a shortening of the leg of about two and one-half (2½) inches and when he bears weight upon the leg, the bone slides upward. He suffered severe pain during hospitalization and for a long time thereafter. The shortage of the leg and the absorption of the femur is a permanent condition. There is a permanent deformity of the left wrist. The rupture of the urethra caused a stricture formation which will require medical care for an indefinite period, and appellant has undergone one operation. He walks with a limp and his activity is decidedly limited.

Considering this evidence we cannot conclude that the jury was prejudiced or corrupt, or took into consideration any improper element in arriving at the amount of recovery.

Damages are not to be predicated alone upon the amount which appellee could have earned if he had not

been injured. The jury was entitled to take into consideration his personal suffering and the fact that he has been deprived of enjoyments common to men of his class.

In the case of *Chicago, etc., R. Co.* v. *Stierwalt* (1928), 87 Ind. App. 478, 153 N. E. 807, this court sustained a judgment for $42,000.00 for the loss of both legs, and in that opinion authorities were collected and cited sustaining judgments in various amounts. After a consideration of the evidence in the instant case, we conclude that the judgment herein is not excessive.

On September 21, 1936, the appellee, under the name of C. W. O'Donnell, W. E. O'Neil Construction Company and the Hartford Accident and Indemnity Company, insurance carrier of W. E. O'Neil Construction Company, filed with the Industrial Board of Indiana a statement of agreement between C. W. O'Donnell, employee, and W. E. O'Neil Construction Company, employer, as to compensation for the injury involved in this appeal, under which agreement the said O'Donnell was to receive compensation at the rate of $13.86 per week from September 6, 1936, until terminated in accordance with the provisions of the Workmen's Compensation Law of the State of Indiana. This agreement was approved by the Industrial Board on September 25, 1936.

On April 5, 1937, C. W. O'Donnell, appellee, and Hartford Accident and Indemnity Company, insurance carrier of W. E. O'Neil Construction Company, entered into an agreement in writing, stipulating that appellee desired to reserve his right to elect to collect compensation, if entitled thereto, from said insurance carrier, but that he believed his injuries were caused by the negligence of appellant herein and R. C. Mahon Company, and that he desired to attempt to collect damages

on account of his injuries from said appellant, and R. C. Mahon Company. It was stipulated in the agreement that the Hartford Accident and Indemnity Company would loan to appellee, while he was attempting to enforce his claim against appellant, R. C. Mahon Company, an amount of money not exceeding the total sum which would be due appellee from his employer, under the compensation law of Indiana, and that if appellee was successful in his claim against appellant and R. C. Mahon Company, he would repay to said Hartford Accident and Indemnity Company all monies loaned him without interest. It was further stipulated that appellee would present his claim for compensation under the Workmen's Compensation law of Indiana but would withhold making a final settlement until his right to collect damages from appellant, R. C. Mahon Company, had been determined, and that if unsuccessful in his claim against appellant, he would prosecute his claim for compensation before said board without prejudice.

It is contended by appellant that appellee entered into written agreement for payment of compensation and that such payments were not made as a loan but were made as compensation under the exercise of his election to proceed under the Workmen's Compensation Act. Appellant further argues that this written agreement between the insurance carrier of appellee's employer, providing for a loan, was entered into some seven months after the original agreement for compensation was filed with the Industrial Board and that the appellee is bound by his original agreement for compensation which contained no stipulation of a loan.

To sustain his contention that the payments made by the insurance carrier were made as a loan, appellee

introduced as witness, his wife, to whom was ▮ propounded the following question:

"Q. And what did he say to you and what did you say to him at that time?"

To this question the witness made the following answer:

"A. I went into the office and Mr. Wicker was very busy and I told him that I did not like the way that contract read—that what I had found out from the Industrial Board that if I signed that I signed away our rights to sue whoever was to blame for my husband's accident in case he did not recover. So, Mr. Wicker told me that it could be arranged in a way that it could be a loan and he said as soon as my husband was able to talk and could attend to business that it would be put in a written form and then my husband could sign it; that I could not sign it and that there could not be anything done about it until he was able to attend to business himself and I said I wanted to go back and sue the party that was to blame and he said in case we did that and recovered anything from the party there would have to be notes signed and they would have to be paid back what they forwarded. I told him that I had to have money to live on. He said that was the only way he could think of that it could be arranged."

The Mr. Wicker referred to in the question and answer was the agent of the insurance carrier of appellee's employer. It is contended by appellant that the admission of this evidence is erroneous for the reason that it is an attempt to annul and vitiate the written compensation agreement. We see no error in the admission of this evidence.

"Where a contract is in writing, parol evidence is not admissible to change or modify it, but such testimony may be admitted to enable the court ▮ to properly apply the contract to the subject-matter, and, in case of ambiguity, to remove the uncertainty. This rule is invoked to enable the

court to ascertain the facts and circumstances as they existed at the time the contract was entered into and to thereby place itself as nearly as possible in the position of the parties whose contract is to be interpreted." *Globe, etc., Ins. Co.* v. *Hamilton* (1917), 65 Ind. App. 541, 545, 116 N. E. 597, and cases cited therein.

Under the issues in the case it was a question of fact for the jury to determine from the evidence as to whether or not the appellee collected compensation from his employer. The statute provides that the employee may proceed against both his employer and the wrongdoer and obtain an award against the employer and also a judgment against the wrongdoer. However, he is prohibited by statute from collecting from both. *Marion County Construction Co.* v. *Kimberlin* (1933), 96 Ind. App. 145, 151, 152, 184 N. E. 574. The mere fact that an agreement for compensation has been made between an employee and employer does not itself indicate that the employee has elected his remedy; and if at that time an oral agreement was made for payment of money as a loan and thereafter a contract was entered into in writing, providing for the payment of money as a loan, all the circumstances surrounding the transaction would be for consideration of the jury in determining under what conditions the payments were made.

Instruction number ten given by the court on its own motion, informed the jury that it was a question of fact for the jury to determine whether monies paid to appellee constituted compensation payments or constituted a loan. It is contended by appellant that this question is one of law and should have been decided by the court. With this contention we do not agree. In the case of *Marion County Construction Co.* v. *Kimberlin, supra,* this court stated:

"The facts and circumstances surrounding the payment and the receipt of the money were proper questions to be inquired into in the instant case."

And quoting further from said case:

"Under the issues in the instant case it became a question of fact for the jury to decide under the evidence as to whether or not the appellee collected compensation from his employer or his employer's insurance carrier."

Instruction number two informed the jury that it was the duty of the defendant to use due care to maintain such steel structure in a reasonably safe condition for the ordinary use of such parties who were lawfully entitled to be about such premises if it was made known to appellant that men other than appellant's employees would use such structure in carrying on other types of work. It is contended by appellant that this instruction is erroneous because the relation of appellant to appellee was that of a licensee and for the further reason that said instruction was inconsistent with appellant's instruction number sixteen, given by the court.

As stated herein before, the relation of appellee and appellant was not that of a permissive licensee, and the giving of this instruction for that reason was not error. We find no inconsistency in the giving of this instruction and defendant's instruction number sixteen which informed the jury that if the defendant had not represented by word or act that said steel work had been completed at the place of the accident, then the verdict should be for the defendant.

It is next contended by appellant that instructions numbers six and eight given to the jury on motion of appellee are erroneous.

We have read these instructions and find them to be

consistent with the reasoning heretofore set forth herein and there was no error in the giving thereof.

Appellant's instruction number three, refused by the court, informed the jury relative to negligence of W. E. O'Neil Construction Company. This was a proper instruction, but no error is present by reason of the fact that the jury was fully instructed relative thereto by appellant's instruction number fifteen given by the court. Appellant's tendered instructions numbers five, six, and seven would have informed the jury relative to election and acceptance of compensation from his employer and the result thereof. This subject we think was adequately covered by appellant's instruction number eight given by the court and by instruction number eleven given by the court on its own motion. Appellant's tendered instruction number nine would have informed the jury that if it found that the stiffener was not designed to bear any weight, and to serve its purpose, it was not necessary to securely fasten it, and that appellee stepped upon a loose stiffener, it could not consider such facts as evidence of any negligence on the part of appellant. This instruction is too restrictive in its scope. The jury was authorized to consider all the evidence submitted in determining the questions involved, and the negligence of appellant was such a question. By instruction number seven given by the court of its own motion, the jury was instructed as to negligence, and there was no error in the refusal to give said instruction number nine.

Instruction number ten tendered by appellant would have instructed the jury that if the duties of appellant in the erection of the structure were not yet completed and the steel work therein was not permanently fastened and it was not customary in the construction of such steel work to tighten the

bolts in the stiffeners, that the appellant was under no obligation to warn the appellee of the condition of the stiffener, nor to have the same securely fastened before the completion of appellant's work on the structure. This was not a proper instruction and if given would tend to relieve appellant of the exercise of due care, and which question of due care was a matter to be determined by the jury from the evidence.

Instruction number twelve tendered by appellant and refused by the court would have informed the jury that under the evidence in the case, it appears that it was unnecessary that the stiffeners used in the construction of the building in question be riveted so tightly as to support the weight of a man, in order to serve the purpose for which they were designed, and they were not to consider the fact, that the stiffener turned, as evidence that appellant had been guilty of negligence.

What appeared from the evidence was a matter for the jury to determine and it was the duty of the jury to consider all of the evidence to ascertain whether appellant was negligent.

Instruction number thirteen tendered by appellant and refused by the court would have informed the jury that if appellant did not invite appellee to go upon the steel structure and that appellant had no interest in appellee's presence on such steel work, then appellee was a mere licensee to whom appellant owed no duty to refrain from careless or negligent acts. What we have heretofore said disposes of the question as to relationship of appellant and appellee and likewise disposes of the question of assigned error in the refusal of the instruction. The instruction was not a proper one.

Instruction number fourteen tendered by appellant

and refused by the court contained the statement that if the failure to tighten the bolts on the stiffener to hold it in place was not done intentionally, but was simply an act of omission, the appellant would not be liable. This was not a proper instruction. If the appellee was not a mere licensee but an invitee, appellant owed him more than the duty not to intentionally injure him and that phase was entirely omitted from the instruction.

There was no error committed by the trial court in refusing to direct a verdict at the close of all the evidence, and what we have said relative to the sufficiency of the evidence obviates any further discussion of this alleged error.

Finding no reversible error, the judgment of the trial court is affirmed.

Judge Blessing not participating.

NOTE.—Reported in 39 N. E. (2d) 812.