## KING'S INDIANA BILLIARD CO., ET AL *v.* WINTERS

[No. 18,150. Filed June 23, 1952. Rehearing denied October 23, 1952. Transfer denied November 25, 1952.]

W. H. *Parr* and *Parr, Parr & Parr* of Lebanon, Indiana, *Bert Beasley,* of *Fenton, Steers, Beasley & Klee* and *Gerald R. Redding* of *Baker & Daniels,* all of Indianapolis, for appellants.

*Hansford Mann* of *Mann, Stohr & Mann,* of Terre Haute and *Ben M. Scifres* of *Scifres & Hollingsworth,* of Lebanon, for appellee.

BOWEN, J.—This is an appeal from a judgment in an action for damages for personal injuries brought by appellee against appellants. Issues were joined upon appellee's amended complaint and answers in denial by the appellants. The cause was tried to a jury and the jury returned a verdict in the amount of $65,000, and judgment was rendered thereon. The defendant filed a motion for a new trial which was overruled by the trial court, and this appeal followed.

Appellants' first assignment of error is that the court erred in overruling the motion of the appellants to discharge prospective jurors during the voir dire examination of the jury. Appellants' motion for the dis-

charge of prospective jurors set forth that upon the voir dire examination of the jury, and in the presence of certain named jurors, each of whom was a prospective juror seated in the jury box within the hearing of one Willis Fulwider, the said Willis Fulwider said in substance: "I talked to Harold Gentry, agent for State Automobile Insurance Association, last night about this case." That thereafter on the same day and upon the calling of said above entitled cause for trial and upon the *voir dire* examination of the jury in said cause and in the presence and hearing of certain named jurors, each of whom was at the time a prospective juror seated in the jury box and within the hearing of one George H. Branstetter, the said George H. Branstetter said in substance: "I talked to the hardware man, Mr. Fulwider, in the jury room a little bit ago and that was the first time I knew anything about this case. Willis Fulwider said the plaintiff was suing for One Hundred Fifty Thousand ($150,000) Dollars damages and had been offered Thirty-five Thousand ($35,000) Dollars."

Such motion sets out that the two statements made in the presence and hearing of persons summoned for jury service were prejudicial and harmful to the appellants, by reason of the fact that they purported to advise the prospective jurors that a compromise settlement had been offered to the plaintiff in the sum of $35,000 which was untrue.

Such motion further charges that the prejudicial effect of such statements could not be removed by any instruction which could be given by the court. That such matters referred to in such statements would be incompetent for said prospective jurors to know or be advised about at any stage of the trial, and that no

instruction given by the court could remove the harmful and prejudicial effect of the statements.

From the special bill of exceptions, it appears that following the making of the statements that the said Willis Fulwider who made the first of such statements was excused by counsel for defendants, and immediately following the statement by the said George H. Branstetter, the counsel for defendants filed their verified motion in writing to discharge all persons summoned as jurors in this cause and who reported for jury service on this day, and who were present in the jury room when the aforementioned statements were made.

The certificate of the trial judge to the special bill of exceptions contains the following statement:

"And after presentation thereof the Court having examined the same finds that the foregoing Bill of Exceptions is full, true, complete and correct, and contains the evidence heard by the Court touching the above statements of prospective jurors Fulwider and Branstetter, upon their said voir dire examination, touching the statement of said jurors as to the amount demanded, and offer of settlement *but does not set out or purport to set out the complete voir dire examination of any prospective juror*, . . ."

It is well established that error may not be predicated on the incompetency of a juror unless the entire *voir dire* examination of such juror is contained in the special bill of exceptions. *Johnson* v. *Holliday* (1881), 79 Ind. 151; *Click* v. *State* (1950), 228 Ind. 644, 94 N. E. 2d 919; *Indianapolis, Peru, & Chicago Railway Co.* v. *Pitzer* (1886), 109 Ind. 179, 6 N. E. 310; *Heacock* v. *Arnold* (1929), 90 Ind. App. 476, 169 N. E. 89; *Annadall* v. *Union, etc., Lime Co.* (1908), 42 Ind. App. 264, 84 N. E. 359.

The appellants contend that the rule of the foregoing cases does not apply by reason of §2-3108 and §2-3109 Burns' Stat.

The appellants insist that the foregoing statutes make it unnecessary for them to set forth the entire *voir dire* examination of the jurors in question in the special bill of exceptions, and that the setting forth of the two statements of Fulwider and Branstetter was sufficient.

It is necessary for us to take into account the nature of the error complained of, and the nature of the proceedings involved in connection with appellants' motion to discharge prospective jurors. It seems apparent that such motion constituted a challenge to such prospective jurors for cause. Our courts have been liberal in allowing challenges for cause in an effort to assure a fair and impartial trial by an unbiased, unprejudiced, and disinterested jury.

Since the entire *voir dire* examination of the jurors was not set forth in the bill of exceptions, it is not possible for this court to properly determine whether the trial court abused its discretion in passing upon the competency of such jurors, in the light of the foregoing decision, some of which are subsequent to the statutes in question relied on by appellants.

It seems that in the instant case in order for this court to properly determine whether the trial court abused its discretion in refusing to discharge the prospective jurors for cause, the entire *voir dire* examination of such prospective jurors should be set out so that this court might determine whether there had been an abuse of discretion.

It further appears in the special bill of exceptions that during the examination of the prospective jurors,

counsel for defendants asked the prospective juror Fulwider as to whether he had formed an opinion about the case, and he responded that he could try the case fairly and impartially. Thereafter, he was excused preemptorily by counsel for defendants. During the examination of the prospective jurors, counsel for defendants asked the prospective juror Branstetter whether the aforesaid statement made by Fulwider had caused him to form an opinion of the case, and he answered that it had not, and that he had no opinion regarding the case. Counsel for defendants also asked each of the prospective jurors whether any of them had formed an opinion from statements made by Fulwider and Branstetter as aforesaid, and they each and all answered that such statements had not caused any of them to form an opinion, and that they would try the case fairly and impartially upon the law and evidence.

The cases mainly relied upon by appellants involve cases of communications to jurors during the trial of a cause, and present a different question than the situation at bar which involves challenges to propective jurors for cause.

In *Conrad* v. *The State* (1896), 144 Ind. 290, 43 N. E. 221, relied on by the appellants, eleven jurors during an evening recess of the trial, and while the case was in progress went to the jail and talked to prisoners who were witnesses in the case, and performed tests to see if defendant had been faking an attempted suicide described in evidence.

*Pearcy* v. *The Michigan Mutual Life Insurance Co.* (1887), 111 Ind. 59, 12 N. E. 98, involved a case of a false statement of a prospective juror on *voir dire* examination which was not discovered until after the trial.

In *Southern Pac. Co.* v. *Klinge* (1933), 65 Fed. 2d 85, it was established by affidavits of jurors without contradiction that while the jury was deliberating one juror said to the others that he had been told that the defendant had been offered $20,000 in settlement of the case. After an overnight adjournment, he said he had investigated and verified the fact that such sum. had been offered.

We think this case is clearly distinguishable from the instant case. In the Klinge case, after the jury was engaged in its deliberation, improper matters were injected into the jury room, and thereby as the court stated, "poisoned the foundation of justice at its source."

In the present case there was a representative of the defendant with whom one of the prospective jurors talked regarding the case. It might be impossible in some instances to find a jury composed of persons, all of whom had never heard communications or statements regarding cases before they entered the jury box. It is entirely true that the communication of reports regarding litigation would justify the trial court in removing a juror for cause, and it might well be that in answering questions on a *voir dire* examination that statements regarding evidence which would be wholly incompetent in trial might be made in the presence of other jurors in response to questions of counsel which would be prejudicial. However, to hold that such statements in the presence of prospective jurors, standing alone, constitute reversible error would completely destroy the discretion vested in the trial court in such matters and would render extremely impractical the administration of justice.

The second error assigned by appellant for reversal is that the court erred in overruling the motion of appellants for a new trial. Causes 2, 3, 4, and 5 in the

motion for a new trial are that the verdict of the jury is not sustained by sufficient evidence, that the verdict of the jury is contrary to law, that the court erred in overruling defendant's motion for a directed verdict at the close of all of plaintiff's evidence. The appellants contend that appellee was guilty of contributory negligence as a matter of law.

Contributory negligence is ordinarily a question of fact for the jury, and it is only where the controlling facts are not in dispute, and about which facts reasonable men can reach but one conclusion, that such question becomes one of law for the court. *Shown* v. *Taylor* (1949), 120 Ind. App. 154, 88 N. E. 2d 783; *Heiny, Admx.* v. *Pennsylvania R. Co.* (1943), 221 Ind. 367, 47 N. E. 2d 145; *Cochrane* v. *Town of Shirley* (1909), 43 Ind. App. 453, 87 N. E. 993; *Baltimore & Ohio R. Co.* v. *Reyher, Admx.* (1939), 216 Ind. 545, 24 N. E. 2d 284; *Northwestern Transit, Inc.* v. *Wagner* (1945), 223 Ind. 447, 61 N. E. 2d 591; *Associated Truck Lines* v. *Velthouse* (1949), 227 Ind. 139, 84 N. E. 2d 54; *Schlarb* v. *Henderson* (1936), 211 Ind. 1, 4 N. E. 2d 205; *Opple et al.* v. *Ray* (1935), 208 Ind. 450, 195 N. E. 81; *Grand Trunk, etc. R. Co.* v. *Cather* (1929), 92 Ind. App. 563, 167 N. E. 551.

From the evidence it appears that the appellee Winters and one James Conover were proceeding east on U. S. Highway No. 40 at a point about five to seven miles west of Indianapolis, nearing a point where the three-lane highway upon which they were traveling widens into four lanes. They were traveling at a speed from 40 to 50 mile per hour and had just passed an automobile proceeding in their direction, and were in the act of passing another car pulling a house trailer which was also going in their direction when the collision occurred with appellant's truck which was com-

ing from the opposite direction. The car pulling the house trailer was in the south lane of the three-lane highway and was traveling at a speed of 25 to 35 miles per hour. At the time appellee started passing the house trailer and the car pulling it, appellant's truck was still on the four-lane portion of the highway, and was traveling in the inner lane of the four-lane highway, and was, at that time, on the right side of said four-lane highway. As the truck going west came into the three-lane portion of the highway, there is evidence that it straddled the line between the north and middle lanes of the three-lane highway, with approximately one-half of the truck extending into the middle lane. Appellant's truck proceeded west on the three-lane portion at a speed of 60 miles per hour. The car which the appellee had passed which was behind the car pulling the house trailer was close behind the house trailer, and the appellee at the time of the accident in question was passing the car pulling the house trailer. The house trailer was wide, being a three-room trailer, twenty-one feet in length, pulled by a 1941 Chevrolet, making an overall length of trailer and car over thirty feet. There is evidence that appellant's truck which was about eight feet wide did not pull over into the north lane of the three-lane highway, and that such lane was entirely free from traffic or other obstructions. There was evidence that the driver of the truck was conversing with his brother who was riding with him and did not see appellee Winters' car at all. Appellant Teague did not swerve his truck to the right until appellee Winters sounded his horn. The left front of the truck struck the left side of appellee Winters' car, scraping the left side of his left front fender and then sheared off the entire left side of Winters' car. After being struck by the truck, Winters' car and the car

pulling the house trailer went off the south side of the highway and came to rest in the driveway of a drive-in theater. The only damage to the right side of Winters' car was a dent in the right rear hub cap, and there was no damage to the front end of appellee Winters' car. There was evidence that Winters' car, during the time prior to the collision, was in the center lane of the three-lane highway and did not encroach on the north lane of the three-lane highway.

While there is evidence which conflicts with the foregoing statement of evidence most favorable to the appellee, in passing upon the question of the negligence of the appellants and whether appellee was guilty of contributory negligence as a matter of law, we must consider the evidence most favorable to appellee.

The above and foregoing recital of the evidence precludes this court from holding that the appellee was guilty of contributory negligence as a matter of law.

There was substantial evidence from which the jury could have determined that the appellant driver was negligent in driving his truck at the time in question. In failing to apply the brakes of the truck in trying to avoid the collision and in failing to keep a lookout for other vehicles using the highway and failing to drive the truck into the north or outside lane of the highway in order to avoid the collision, and from the circumstances shown in the record, it could have been reasonably inferred by the trier of the facts that the acts of negligence of the driver of appellant's truck were the direct and proximate cause of appellee's injuries.

The verdict of the jury is sustained by sufficient evidence and is not contrary to law, and the court did not

err in overruling defendant's motion at the close of all of the evidence to direct a verdict in favor of defendant.

In Causes Nos. 1 and 2 of their motion for a new trial, the appellants assert the damages assessed by the jury are excessive, and accordingly, is not sustained by sufficient evidence for such reason, and they assert that the amount of the verdict, $65,-000, is shocking and indicates passion, prejudice, and sympathy.

From the testimony of Paul Merrell, neurosurgeon, who attended Winters at the time of his injury, and Joseph Weber, M. D., and radiologist, and other evidence in the case, it appears that appellee's injuries may be described thusly:

The left upper arm of appellee Winters was crushed with bony fragments sticking out through the severely lacerated soft tissue. This arm was amputated near the shoulder, and Winters will be unable to use an artificial limb because no muscle remains to make it go.

He sustained a fractured rib at a point about three inches from his spine with considerable displacement of fragments of bone which is permanent.

There are physical findings of involvement of the lumbar spine indicative of arthritis set up by the injury.

A dislocated sixth cervical vertebra with displacement of about one quarter inch. This dislocation causes Winters definite stiffness and inability to move his neck. It also causes numbness or loss of sensation in the right hand. This injury is permanent and surgery is inadvisable. This dislocated vertebra is sitting at a bad angle. The neck, by reason of it, is much weaker than an ordinary neck. An ordinary jar which a normal neck could withstand with ease may completely dislo-

cate the vertebra causing further damage to the spinal cord or severing it. In the latter case, death would result. Winters is advised to wear a supporting collar when riding in an automobile. In an effort to reduce the dislocation of this vertebra, appellee Winters went to Barnes Hospital in St. Louis where Dr. Reynolds and Dr. Keys applied traction. In doing this, the scalp was cut and holes were drilled through the skull. Tongs were then placed in the holes in the skull, and traction (by means of a rope run through a pulley and attached to a 24-pound weight) was exerted on the tongs in an effort to stretch the spine and permit the vertebra to slip back in place. The first time the holes were drilled, the tongs pulled out and new holes had to be drilled. X-ray pictures were taken daily, and, at the end of five or six days, the effort was abandoned because of the intense pain and failure to get results.

In the collision, Winters sustained a severe concussion of the brain involving both hemispheres. This injury has done permanent damage to the brain, causing his perception and mental reactions to be slower than normal. It also causes him to have difficulty in finding words with which to express himself, although, if allowed sufficient time, he can come to conclusions as logically as anyone. This brain injury also has resulted in overactive deep reflexes; loss of sensation in the throat which results in difficulty in swallowing food and strangulation; impairment of the sense of balance; and a ringing in the ears. After the collision, when employed in the office of the nursery where he earned $850.00 per year, appellee Winters, according to the testimony of his employer, would sometimes have complete mental lapses about events that transpired in the office. Sometimes, when asked a simple question, he could not coordinate his thoughts with his speech for

such long periods of time that the silence would become embarrassing. Appellee Winters had been employed with the thought that the job might help to rehabilitate him, but the employment was terminated for the sake of the business when Winters did not show improvement.

Miscellaneous findings and injuries include: A head wound over the left side of the vertex which required sewing up. In walking, there is a tilt of the spine to the left. Numbness of the entire shoulder girdle; lessening of tactile sensation in lateral aspect of the right thigh, calf and dorsum of right foot; the hypaethesia of the right forearm are all present. By reason of his mental and physical impairment, he is medically unfit to drive an automobile—it would be dangerous. He is not employable at manual labor. His physical and mental condition will not improve.

It is apparent from the evidence that appellee is unable to perform many operations in taking care of his person that other persons are able to do, and that the description of shock; repeated administration of plasma and whole blood; the amputation; the onset of Cheyne Stokes respiration, wherein breathing stops for almost a minute, then begins again; bilateral Babinskis —swelling or deterioration of the brain itself, it can be seen that the jury had before it an extreme case of pain and suffering which attended and followed such injuries to the appellee. Winters, at the time of his injury, was 37 years of age. He was Park Superintendent of the City of Terre Haute. At the time of the trial, his salary as Park Superintendent was $3,000 per year, and during the war years, the appellee earned $150 per week and that the only money earned since the injury has been $850 per year. The jury in assessing damages for loss of earnings is not limited to the

amount being earned by the plaintiff at the exact time of his injury, but may fairly compensate the plaintiff for such loss of earnings as he actually has and will sustain. *Evansville Furn. Co.* v. *Freeman* (1915), 57 Ind. App. 576, 105 N. E. 258; *Marietta Glass Mfg. Co.* v. *Bennett* (1916), 60 Ind. App. 435, 106 N. E. 419.

In addition the jury was required to consider that the appellee was deprived of loss of privileges and enjoyment common to men of his class. *Samuel E. Pentecost Const. Co.* v. *O'Donnell* (1942), 112 Ind. App. 47, 39 N. E. 2d 812; *Chicago, etc., R. Co.* v. *Stierwalt* (1928), 87 Ind. App. 478, 153 N. E. 807.

And, furthermore, the court on appeal will consider the diminished purchasing power of the dollar at the time the verdict is rendered. *Loehr* v. *Meuser* (1950), 120 Ind. App. 630, 93 N. E. 2d 363; *Chicago, etc. R. Co.* v. *Stierwalt, supra.*

We cannot say on the basis of the evidence before us that the damages awarded are such as to show that the jury was actuated by passion, prejudice, or sympathy, or any improper motive.

The appellants assert that the court erred in giving to the jury appellee's tendered Instructions Nos. 1, 2, 3, and 5.

Appellants' objections to the giving of Instructions Nos. 1, 3, and 5 are based upon the contention that each of the three instructions were mandatory, but failed to include the element of appellee's freedom from contributory negligence. Each of such instructions contained statements to the effect that if the jury found that the appellants' negligence was the *sole and proximate* cause of appellee's injuries the verdict should be for the plaintiff. By the use of such

words the court told the jury that they must find that the defendant's negligence was the sole proximate cause of appellee's injuries and in so doing, said in effect there must have been no other proximate causes, which other proximate causes would include the contributory negligence, if any, of the plaintiff. *Weis* v. *Wakefield* (1942), 111 Ind. App. 106, 38 N. E. 2d 303; *Gerow* v. *Hankins* (1934), 99 Ind. App. 352, 192 N. E. 713.

Appellants make further objection to Instruction No. 1, and assert that such instruction quotes statutory provisions which have no relationship to the evidence and issues in the case. Such instruction quoted subsection (b) of §47-2018 Burns' Stat., 1952 Replacement. The first portion of such quoted subsection to-wit: "Upon a roadway which is divided into three lanes a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle where the roadway is clearly visible and such center lane is clear of traffic within a safe distance," is applicable to the evidence in this case. The disjunctive remaining portion of such subsection which referred to left turns or "in moving in the direction the vehicle is proceeding and is signposted to give notice of such allocation" were not applicable to the evidence. However, since portions of such subsection were properly applicable to the evidence in the case, and the remaining portions of such subsection were in the disjunctive, and do not contain any wording which would be prejudicial to the defendants, it does not appear that appellants have been harmed thereby, nor that the jury could have been misled.

Appellants further assert that appellee's Instructions Nos. 1 and 2 were confusing and misleading. The ob-

jection that an instruction is "confusing and misleading" is not a specific objection within the meaning of rule 1-7 and raises no question on appeal. *Indianapolis Railways, Inc.* v. *Williams* (1945), 115 Ind. App. 383, 59 N. E. 2d 586.

Cause 8 of appellants' motion for a new trial asserts error in the refusal of the court to give appellants' tendered instruction No. 17 which reads as follows:

"If you find from the preponderance of the evidence that defendant Teague at the time and place in question operated his truck at all times within the northerly lane of traffic, then you are instructed that your verdict should be in favor of the defendants and each of them."

Appellants insist that such instruction was a correct statement of the law, that it was applicable to the evidence, and that the subject of such instruction was not covered by other instructions. However, such instruction is a mandatory instruction and told the jury that if the appellant operated his truck at all times within the northerly lane of traffic the verdict should be for defendants. Such instruction completely omitted allegations in plaintiff's complaint relative to speed, and failure to keep a proper lookout upon which there was some evidence. When an instruction is mandatory to a jury and directs a verdict on condition that the jury finds from the evidence that certain facts exist, such instruction must recite all the facts and conditions essential to a verdict. If an essential fact is omitted, the instruction is erroneous and the error is not cured by supplying the omission in another instruction. *Redd* v. *Indianapolis Railways* (1951), 121 Ind. App. 472, 97 N. E. 2d 501; *Union Traction Co.* v. *Elmore* (1917),

66 Ind. App. 95, 116 N. E. 837; *Dunbar* v. *Demaree* (1936), 102 Ind. App. 585, 2 N. E. 2d 1003.

Appellants also predicate error upon the refusal of the court to give defendant's tendered Instruction No. 18. The substance of such instruction was fully covered by appellants' Instructions Nos. 5 and 13 which were given by the court.

Additional error is asserted in the refusal of the court to give appellants' tendered Instruction No. 22. By Instruction No. 20 which was given the court told the jurors not to let their verdict be influenced by sympathy or prejudice, and that their only aim should be to arrive at a verdict that is fair and just to the parties. Instruction No. 22 would have added the additional factor that they should not agree on a verdict unless their consciences approved. From a consideration of all of the instructions given in this cause, it appears to this court that a fair trial was had and a just result reached under the law and the evidence. *Carter* v. *Aetna Life Ins. Co.* (1940), 217 Ind. 282, 27 N. E. 2d 75; *Indianapolis Traction etc. Co.* v. *Thornburg* (1920), 74 Ind. App. 642, 125 N. E. 57; *State* v. *Coridan* (1943), 221 Ind. 404, 47 N. E. 2d 978.

We find no reversible error, and the judgment is, therefore, affirmed.

NOTE.—Reported in 106 N. E. 2d 713.