Gary L. MARKS and Mr. Sanitation, Inc., Defendants–Appellants,

v.

Donald E. GASKILL and Mary Ann Gaskill, Plaintiffs–Appellees.

No. 50A03–8809–CV–281.

Court of Appeals of Indiana, Third District.

Dec. 4, 1989.

Timothy J. Walsh, Edward N. Kalamaros & Assoc. PC, South Bend, for defendants-appellants.

Stephen I. Eslinger, South Bend, for plaintiffs-appellees.

GARRARD, Presiding Judge.

Gary L. Marks and Mr. Sanitation, Inc. appeal a verdict of the Marshall Circuit Court in favor of Donald E. and Mary Ann Gaskill. Donald Gaskill was awarded $100,000 and Mrs. Gaskill $10,000 for damages arising from a motor vehicle collision on September 10, 1984 along U.S. Highway 20 in Mishawaka, Indiana. Marks and Mr. Sanitation present seven issues on appeal; we will consider only two:

1) Whether it was reversible error for the trial court to allow the investigating officer to testify as an expert that the defendants were at fault.

2) Whether it was error for the trial court to instruct the jury that in calculating damages, it may consider the plaintiff's loss of the enjoyment of life.

We reverse.

### Facts

On September 10, 1984, Donald Gaskill was driving a Pontiac automobile west on U.S. Highway 20. At the same time, Marks was driving a Mr. Sanitation garbage truck through a driveway located on the south side of Highway 20. Marks drove his truck onto the highway, intending to turn west, and Gaskill's car collided with the passenger's side of the garbage truck at the front wheels. Paramedics removed Gaskill from the car and took him to the hospital. Gaskill suffered injuries to his leg and neck and underwent surgery twice. He continued to experience neck and back pain at the time of trial and to have difficulty walking.

The Gaskills sued Marks and Mr. Sanitation claiming negligence. Marks and Mr. Sanitation asserted contributory negligence as an affirmative defense. The jury returned a verdict for the Gaskills and allowed $100,000 recovery on Donald Gaskill's claim and $10,000 on Mrs. Gaskill's loss of consortium claim.

### I.

### *Expert Testimony on Fault*

Marks and Mr. Sanitation contend that the trial court erred in allowing Police Officer Darrell Benjamin to give opinion testimony as to who was at fault. The dialogue on direct examination is as follows:

Q. Corporal Benjamin, you've indicated that you've had schooling on accidents and fault at accidents, and such, were you able to determine, from talking with the truck driver and from talking with Mr. Gaskill, what had happened in this collision?

\* \* \* \* \* \*

A. Was I able to determine by talking to him?

Q. Yes?

A. Yes.

\* \* \* \* \* \*

Q. And, did you take into consideration what you saw there at the collision scene?

A. Yes.

Q. Was what you saw at the collision scene, consistent with what each of the drivers had told you?

A. Yes.

Q. And, now my question is, did you make a conclusion, yes or no, as to who was at fault in this collision?

A. Yes.

Q. Who was at fault?

MR. WALSH: To which we're going to object, Your Honor, for obvious reasons. This witness has not been qualified to express an opinion in that regard, number one (1). Number two (2) it invades the ultimate province of the jury to decide that?

THE COURT: Response?

MR. ESLINGER: Your Honor, the Courts have been quite lenient in recent years about allowing an expert

witness to testify as to the final conclusion in the case, or the final issue to be reached. And, in addition, we have qualified this witness by showing that he has expertise in this particular area and years and years and years of experience. I think he's qualified to answer that question and should be allowed to answer it.

THE COURT: Objection overruled. Go ahead and answer the question.

\* \* \* \* \* \*

Q. My question is, who is at fault?

A. I would say the truck.

Q. Why?

MR. WALSH: Your Honor, I'm going to object and I would ask for a continuing objection on the record.

THE COURT: We'll show your objection. Overruled.

A. The positions of the vehicles.

Q. Well, was there more to your conclusion tha[n] that?

A. Well, the weather, it was awful wet. There was a lot of traffic up there and the position of the vehicles in the roadway, two (2) to four (4) foot over the center line, and where the damage was on the vehicles indicates to me, personally, not to anybody else, that the truck was at fault.

■■■ Marks and Mr. Sanitation contend that Officer Benjamin was not qualified or competent to give an opinion on an ultimate issue in the trial, and that Corporal Benjamin's testimony invaded the province of the jury. The expert witness's training, education, and experience provide the foundation required to offer his expert opinion. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 899. The expert is not required to demonstrate specific principles or calculations to qualify to state an opinion. However, his specific knowledge or lack thereof may affect the weight the jury will give his testimony. *Id.* Darrell Benjamin was clearly qualified to give expert testimony. He had served 19 years on the Mishawaka Police Department, most of which he served in automobile accident investigation. He had taken numerous refresher courses in accident investigation over the years.

The trial court did not abuse its discretion in allowing Corporal Benjamin to testify as an expert.

■■■ The question remains whether Corporal Benjamin was qualified to opine as to who was at fault. When the trial court determines that an expert's opinion is a legal conclusion, it may exclude such testimony. An expert's opinion that the defendant was responsible for a defective condition and owed the plaintiff a duty is a legal conclusion. *Harman v. C.E. & M., Inc.* (1986), Ind.App., 493 N.E.2d 1319, 1321. Moreover, broad form conclusions such as, "A is at fault," should not be allowed as expert opinions and are inadmissible. *Rosenbalm v. Winski* (1975), 165 Ind.App. 378, 385, 332 N.E.2d 249, 254. Expert opinion is inappropriate in matters within common knowledge.

> Where the question posed to the expert injects as an element necessary to the answer, the issue of whether a party was negligent or exercising reasonable care, the question becomes objectionable because in the eyes of the law, ordinary [persons] are capable of making that assessment based upon their common knowledge and experience.

*Id.* at 386, 332 N.E.2d at 254. Corporal Benjamin testified that the truck, i.e., Marks, was at fault. The answer necessarily implied that there was no contributory negligence on the part of Gaskill. That testimony should have been excluded.

Harmless error is not ground for reversal. Indiana Rules of Procedure, Trial Rule 61. We find that this error is not harmless. Benjamin's testimony was contradicted only by the expert testimony of Michael Bobele, who was not the investigating officer and who made his findings some three years after the accident. It would be natural for a jury to attach more weight to the testimony of Corporal Benjamin. Benjamin's testimony was not superfluous; indeed, it addressed two issues: the negligence of Marks and Mr. Sanitation and the contributory negligence of Donald Gaskill. As such, it was highly prejudicial and reversible error.

## II.

### Loss of the Enjoyment of Life

■ Marks and Mr. Sanitation contend that it was error for the court to instruct the jury that in determining damages, the jury may consider Gaskill's "loss of the enjoyment of life." We agree.

The Indiana Supreme Court has refused to allow a separate category of damages for loss of the enjoyment of life. *Indianapolis Street R. Co. v. Ray* (1906), 167 Ind. 236, 78 N.E. 978; *City of Columbus v. Strassner* (1890), 124 Ind. 482, 25 N.E. 65. An instruction that the jury in assessing damages should take into account any "lack of personal enjoyment" occasioned by the injury was error. *City of Columbus, supra,* 124 Ind. at 489, 25 N.E. at 67. An instruction that the plaintiff may recover "for being deprived of freedom of action, and social meeting and intercourse with her friends, which ... she would have enjoyed but for the receipt of such injuries...." was error. *Indianapolis Street R. Co. v. Ray, supra,* 167 Ind. at 244, 78 N.E. at 980. An instruction that the jury should consider the plaintiff's "inability ... to enjoy life in the manner he was accustomed to" was also error. *NIPSCO v. Robinson* (1939), 106 Ind.App. 210, 213, 18 N.E.2d 933, 936.

Damages for loss of enjoyment were considered too difficult to measure. *City of Columbus v. Strassner, supra,* 124 Ind. at 489, 25 N.E. at 67. A jury should not be allowed to assess damages based wholly upon sentiment or the mental reactions of a particular plaintiff. *NIPSCO v. Robinson, supra,* 106 Ind.App. at 217, 18 N.E.2d at 936. Deprivation of freedom of action and social intercourse, items within the concept of "enjoyment of life" are embraced within the term "mental suffering," for which damages are already allowed. *Indianapolis Street R. Co. v. Ray, supra,* 167 Ind. at 248, 78 N.E. at 981.

More recent Indiana cases seem to have somewhat retreated from the prohibition of recovery for loss of enjoyment of life. *Grubbs v. U.S.* (N.D.Ind.1984), 581 F.Supp. 536; *Dallas & Mavis Forwarding Co. v. Liddell* (1955), 126 Ind.App. 113, 126 N.E.2d 18; *King's Indiana Billiard Co. v.*

*Winters* (1952), 123 Ind.App. 110, 106 N.E.2d 713; *Samuel E. Pentecost Construction Co. v. O'Donnell* (1942), 112 Ind. App. 47, 39 N.E.2d 812. These cases are consistent, however, with earlier Indiana cases. In cases assessing whether damage awards were excessive rather than challenging a jury instruction, Indiana appellate courts have said that juries may consider the fact that plaintiff has been deprived of privileges and enjoyment common to persons of his class, *King's Indiana Billiard Co. v. Winters, supra,* 123 Ind. App. at 125, 106 N.E.2d at 719; *Samuel E. Pentecost Construction Co. v. O'Donnell, supra,* 112 Ind.App. at 63–64, 39 N.E.2d at 819, or it may consider the plaintiff's disability to perform the ordinary pursuits of life. *Dallas & Mavis Forwarding Co. v. Liddell, supra,* 126 Ind.App. at 113, 126 N.E.2d at 20. At no time have Indiana courts ever sanctioned a separate category of damages for loss of the enjoyment of life. *See Grubbs v. U.S., supra,* 581 F.Supp. at 540–41 (Indiana requires an evaluation of several elements, one of which is the nature, extent, and permanency of the injury as the same affects the quality and enjoyment of life).

The instruction as tendered permits the jury to award damages for Gaskill's unhappiness with his present situation. It forces the jury to consider Gaskill's subjective evaluation of his damages. Such an instruction feeds an increasing sentiment in society that bodily perfection is the key to enjoying life, and that the lack or loss of a bodily function extinguishes that enjoyment. It also invites plaintiffs to put the most pathetic face on their predicament in order to arouse juries into awarding larger sums. "Unhappiness ... cannot be held to have [its] origin or inception in the physical injury, but will be presumed to have flowed from contemplation, or brooding over the bodily hurt." *Indianapolis Street R. Co. v. Ray, supra,* 167 Ind. at 248, 78 N.E. at 981. Unhappiness is not the subject of actionable damages because it is a remote result of the physical injury. *Id.* at 246, 78 N.E. at 981.

■ While juries may consider loss of enjoyment in calculating damages, *King's*

*Indiana Billiard Co. v. Winters, supra,* it is more accurate to phrase "loss of enjoyment" as "the future effects of an injury which have reduced the capability of an individual to function as a whole [person]." *Flannery v. U.S.* (W.Va.1982), 297 S.E.2d 433, 437. The Federal Court for the Northern District of Indiana stated it another way: nature, extent and permanency of the injury *as the same affects* the quality and enjoyment of life. *Grubbs v. U.S., supra,* 581 F.Supp. at 541. Stated either way, juries may consider a loss to the quality of life only in connection with or as a factor of other damages such as permanence, pain and suffering, or mental anguish. Juries are able to objectively discern how disabilities affect the quality of life and are able to calculate damages to compensate for the adjustments needed to make the person whole again. A jury cannot, however, restore the enjoyment to life.

The jury was told it could consider, in addition to loss of the enjoyment of life, the nature and extent of the injuries; whether the injuries are temporary or permanent; past and future pain and suffering; the value of lost earnings and impairment of earning capacity; reasonable expenses for medical care, treatment, and services; and the aggravation of a previous injury or condition. Gaskill lists in his brief 17 areas affecting his ability to enjoy life; many are just as applicable to other categories of damages the jury could consider. For example, Gaskill's inability to work in the garden, finish the construction of a new home or climb stairs are evidence of the nature and extent of his injuries. Personality changes can be evidence of pain and suffering. There is no question that the injury affected the quality of Gaskill's life, but allowing the jury to award damages for loss of the enjoyment of life risks double recoveries and awards based upon sentiment and is reversible error.

### Conclusion

We reverse and remand for new trial.

HOFFMAN, J., concurs.

STATON, J., concurs in result and files separate opinion.

STATON, Judge, concurring.

I concur only in the result of the majority opinion. While the opinion is correct in stating that "[a] jury, cannot, ..., restore the enjoyment to life" (Opinion, p. 1249, I believe that juries should be allowed to consider the loss of the quality and enjoyment of life. However, consciously or not, such consideration occurs when the jury considers the nature and extent of the injury or the permanency of the injury. Thus, while I condone presenting the loss of the quality and enjoyment of life as a *factor* of one of the other elements, I believe it should be coupled with either the nature and extent of the injury or the permanency of the injury. As explained in my concurring opinion to *Seifert v. Bland* (1989), Ind.App., 546 N.E.2d 1242 allowing a jury to consider the loss of the quality and enjoyment of life as a separate element of damages, (as was done in this case), or coupling the loss of the quality and enjoyment of life with the pain and suffering element, is an invitation for double recovery.

Accordingly, I advocate coupling the loss of the quality and enjoyment of life with the nature and extent of the injury. This allows the jury to consider the loss of the quality and enjoyment of life but prevents a double consideration, and hence, a double recovery.