Glen McCAMMON, Appellant
(Plaintiff Below),

v.

YOUNGSTOWN SHEET AND TUBE
COMPANY, Appellee
(Defendant Below).

No. 4–681A18.

Court of Appeals of Indiana,
Third District.

Oct. 28, 1981.

Rehearing Denied Dec. 14, 1981.

John A. Hovanec, Gary, for appellant.

James E. Schreiner, Tinkham, Schreiner & Bloom, P.C., Hammond, for appellee.

HOFFMAN, Presiding Judge.

Glen McCammon appeals the Industrial Board's negative award on his claim for permanent partial impairment. The issues raised are:

(1) whether the Board's finding of facts is sufficiently specific to allow appellate review;

(2) whether the facts found by the Board are supported by the evidence; and

(3) whether the Board erred in determining that McCammon's settlement with a third party terminated his employer's liability.

The Board adopted the findings of the single hearing member and entered the following award:

"STIPULATION

The parties stipulated that on the 30th day of August, 1976, Plaintiff, GLEN

McCAMMON, was employed by the Defendant, YOUNGSTOWN SHEET AND TUBE COMPANY, at an average weekly wage in excess of of [sic] the applicable statutory maximum recoverable pursuant to the Indiana Workmen's Compensation Act. The parties further stipulated that the Plaintiff sustained injuries arising out of and in the course of his employment by the Defendant on August 30, 1976. The parties further stipulated to the Plaintiff having satisfied the statutory notice requirements pursuant to the Indiana Workmen's Compensation Act, and that Defendant furnished all medical, surgical, hospital, nursing care, services necessitated thereby. The parties further stipulated that pursuant to a Form No. 12 Agreement approved September 15, 1976, Defendant paid compensation for temporary total disability at One Hundred Four Dollars ($104.00) weekly from August 31, 1976 to December 5, 1976 and July 11, 1977 to September 26, 1977, for a total of twenty-five (25) weeks; and that the Plaintiff last returned to work on the 27th day of September, 1977, when his disability terminated. The parties stipulated into evidence the medical reports of Dr. Westhaysen, Dr. Rudser, Dr. Fetrow and Dr. Roth, and the deposition of Dr. Roth taken April 3, 1978.

#### "ISSUES

The issues to be determined by the Single Hearing Member are whether or not Plaintiff, GLEN McCAMMON, suffered any permanent partial impairment as a result of his accidental injury of August 30, 1976; and if so, the amount of permanent partial impairment resulting therefrom.

#### "EVIDENCE

There was no testimony taken at the hearing, however, the medical evidence submitted shows that Plaintiff had a spondylolisthesis at the 5th lumbar vertebra with increased lordosis of the lumbar durvature, which is of congenital origin and which has formed a pseudoarthrosis on the left that produces radicular pain in the left leg; that the medical opinions are conflicting regarding aggravation of the pre-existing spinal condition as a result of the accidental injury of August 30, 1976; that Dr. Leo Roth stated in his deposition taken April 3, 1978, that in his opinion he would give Plaintiff a disability of close to fifty percent (50%) of the individual as a whole, but that the [sic] felt Plaintiff's back problem was not related to this accident; that prior to this hearing date, Plaintiff settled and dismissed his third party suit agains [sic] Vulcan Materials Company for the sum of Ten Thousand Dollars ($10,000.00).

#### "FINDINGS

Said Hearing Member, having heard the stipulation of the parties, and having reviewed the entire file and being duly advised in the premises therein, now adopts the stipulation as the Board's findings.

It is further found that there is no evidence as to permanent partial impairment, if any, relating directly to Plaintiff's accidental injury with Defendant on the 30th day of August, 1976, and not caused by his pre-existing spondylolisthesis.

It is further found that by settlement of the third party suit, and pursuant to Section 13 of the Act, Defendant has no further liability to Plaintiff under the Workmen's Compensation Act of Indiana, and the Hearing Member now finds for Defendant and against Plaintiff on Plaintiff's Form No. 9 Application for the adjustment of claim for compensation filed May 15, 1978.

#### "AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Industrial Board of Indiana that Plaintiff take nothing as against Defendant on his Form No. 9 Application filed May 15, 1978, and that Plaintiff pay costs, if any, taxed in this cause."

In determining whether the Board's findings are sufficiently specific to allow intelligent appellate review, this Court is guided

by the principles established by the Indiana Supreme Court in the recent decisions of *Perez v. United States Steel Corporation* (1981) (Ind.) 426 N.E.2d 29 and *Talas v. Correct Piping Company, Inc.* (1981), Ind., 426 N.E.2d 26. In the present case the Board made the following finding:

"It is further found that there is no evidence as to permanent partial impairment, if any, relating directly to Plaintiff's accidental injury with Defendant on the 30th day of August, 1976, and not caused by his preexisting spondylolisthesis."

■ An examination of this finding reveals that in reality it is three separate findings: 1) McCammon had a pre-existing spondylolisthesis; 2) there is no evidence that any permanent partial impairment is related to McCammon's accidental injury with Youngstown Sheet and Tube Company; and 3) there is no evidence that any permanent partial impairment was not caused by the pre-existing spondylolisthesis.[1] These findings, along with the Board's adoption of the parties' stipulations, are sufficiently specific to "reveal the Board's analysis of the evidence and its determination therefrom regarding the various specific issues of fact which bear on the particular claim." *Perez, supra,* at 33.[2]

It must also be noted that the Board made a finding that "there is *no* evidence" (emphasis added) that any permanent partial impairment was directly related to McCammon's injury of August 30, 1976. In *Transport Motor Express, Inc. v. Smith* (1972), Ind.App., 289 N.E.2d 737 *vacated on other grounds* at 262 Ind. 41, 311 N.E.2d 424 (1974), this Court noted:

"Some negative awards are the lawful and proper result of there being no evidence at all in the record as to some one or more relevant questions of basic fact. In such a case it is impossible for the Board to find either that such basic fact does exist or that it does not exist, but

the Board can and should find that there is no evidence either affirming or negating such fact. If, however, the Board fails to make the appropriate "no evidence" finding, the reviewing court can affirm such an award without thereby usurping the Board's fact finding authority. To sift the evidence to find that there is *no evidence* of some fact essential to an affirmative award is not to make a finding of fact." (Original emphasis.) 289 N.E.2d at 745–746 n. 10.

*See also, Perez v. United States Steel Corp.* (1981), Ind.App., 416 N.E.2d 864, at 868 n. 1 (dissenting opinion, Staton, J.) *vacated* (1981) Ind., 426 N.E.2d 29. Although neither *Transport Motor Express* nor Judge Staton's dissent in *Perez* can be considered as precedent, the reasoning with regard to a "no evidence" finding is sound. The "no evidence" finding is sufficiently specific to allow intelligent appellate review.

■ A review of the record reveals that the medical evidence consists of the deposition of Dr. Leo Roth and various letters concerning McCammon's condition written by Dr. Roth and other physicians. Only Dr. Roth indicated that McCammon had suffered a permanent partial impairment. Dr. Roth also testified however that this impairment was the result of a pre-existing condition and was not related to McCammon's accident on August 30, 1976. The other physicians also noted the pre-existing condition and McCammon's present problems, but did not acknowledge that McCammon had suffered a permanent partial impairment. "Impairment" has been defined as a loss of physical function. *White v. Woolery Stone Co., Inc.* (1979), Ind.App., 396 N.E.2d 137. A permanent partial impairment cannot be found until the injury reaches a permanent and quiescent state, the treatment period ends, and the permanent injury can be assessed for compensation purposes. *White, supra.* With the exception of Dr. Roth, none of the physicians

---

1. The Board should be mindful of the following instruction given in *Perez, supra,* at 33: "We also note that findings of fact should be numbered sequentially to facilitate the parties' ability to reference courts of review to the focal points of their claimed errors."

2. The only issues before the Board were whether McCammon suffered any permanent partial impairment as a result of his accidental injury of August 30, 1976; and, if so, the amount of permanent partial impairment resulting therefrom.

indicated that McCammon had any loss of physical function or that his condition had reached a permanent and quiescent state. In fact, the physicians suggested various treatments and noted the possibility of future surgery if the treatments did not alleviate McCammon's problems. The Board therefore did not err in making its "no evidence" finding.

The Board also stated:

"It is further found that by settlement of the third party suit, and pursuant to Section 13 of the Act, Defendant has no further liability to Plaintiff under the Workmen's Compensation Act of Indiana, and the Hearing Member now finds for Defendant and against Plaintiff on Plaintiff's Form No. 9 Application for the adjustment of claim for compensation filed May 15, 1978."

This finding is also a combination of separate findings. Here the Board found that: 1) there was a settlement of a third-party suit and 2) pursuant to Section 13 of the Workmen's Compensation Act, Youngstown Sheet and Tube Company has no further liability towards McCammon. These findings are also sufficient to enable this Court to review the Board's analysis of the evidence and the determination made therefrom.

The record reveals the following:

Hearing Officer: "Further, let the record show that there is a stipulation that Vulcan Materials Company has paid the sum of Ten Thousand Dollars ($10,000.00) as full and final settlement with a draft or check in the sum of Ten Thousand Dollars ($10,000.00) issued to Plaintiff and Plaintiff's attorney, dated 7–1–80, on this third-party settlement for the injury in question. Is that a proper statement of the record?

Mr. McCammon: "That's right, Your Honor.

Mr. Hovanec [Counsel for McCammon]: "Yes.

Hearing Officer: "Did I cover it right?

Mr. Schreiner [Counsel for Youngstown Sheet & Tube Company]: "Yes."

This evidence is sufficient to sustain the Board's finding regarding the settlement.

The applicable portion of IC 1971, 22–3–2–13 (1980 Burns Supp.) provides:

"Whenever an injury or death, for which compensation is payable under chapters 2 through 6 [22–3–2–1—22–3–6–3] of this article shall have been sustained under circumstances creating in some other person than the employer and not in the same employ a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in case of death, may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under chapters 2 through 6 of this article. In that case, however, *if the action against the other person is brought by the injured employee or his dependents and judgment is obtained and paid, and accepted or settlement is made with the other person, either with or without suit, then from the amount received by the employee or dependents there shall be paid to the employer or the employer's compensation insurance carrier, subject to its paying its pro-rata share of the reasonable and necessary costs and expenses of asserting the third party claim, the amount of compensation paid to the employee or dependents, plus the medical, surgical, hospital and nurses' services and supplies and burial expenses paid by the employer or the employer's compensation insurance carrier and the liability of the employer or the employer's compensation insurance carrier to pay further compensation or other expenses shall thereupon terminate*, whether or not one [1] or all of the dependents are entitled to share in the proceeds of the settlement or recovery and whether or not one [1] or all of the dependents could have maintained the action or claim for wrongful death." (Emphasis added.)

Clearly the statute provides that if an action is brought by an injured employee against a third party and a settlement is made, the liability of the employer or employer's compensation carrier to pay further compensation terminates. *Koughn v.*

*Utrad Industries, Inc.* (1971), 150 Ind.App. 110, 275 N.E.2d 572. McCammon refers this Court to another portion of IC 1971, 22–3–2–13 which gives the employee an option of either collecting a judgment and repaying the employer for compensation previously drawn or of assigning all rights under the judgment to the employer and thereafter receiving from the employer the compensation to which he is entitled. This portion of the statute is inapplicable in the present case however, because it requires that a final judgment, other than by agreement, be received by the injured employee. The evidence is uncontroverted that McCammon did not procure a final judgment, but rather reached an agreed settlement with the third party.

Either of the findings, together with the supporting evidence, discussed herein would have been sufficient to sustain the Board's negative award. The Board committed no error in making either finding. For these reasons the decision of the Board is affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.