**John Allen CREECH and Nancy Creech, Appellants (Plaintiffs Below),**

**v.**

**SOUTHEASTERN INDIANA R.E.M.C., INC. and Dico, Inc., Appellees (Defendants Below).**

**No. 1–683A194.**

Court of Appeals of Indiana, First District.

Nov. 1, 1984.

John J. Dornette, Votaw & Dornette, Lawrenceburg, for appellants.

Peter G. Tamulonis, Andrew Sulen, Jr., Knightlinger, Young, Grey & De Trude, Indianapolis, Warren Michael Wilke, Wickens, Wickens, & Wilke, Greensburg, Peter L. Obremskey, Parr, Richey, Obremskey & Morton, Lebanon, for appellees.

ROBERTSON, Judge.

John Allen Creech and his wife Nancy, plaintiffs, appeal summary judgments granted in favor of the defendants, Dico, Inc. and Southeastern Indiana REMC, Inc., on their complaint to recover damages for injuries John received when a boom he was operating came into contact with an electrical high voltage line.

John was an employee of Top Quality Building Products, Inc. and he was unloading concrete block when the loading boom touched a high voltage electrical power line owned by REMC. The boom was manufactured by Dico. Dico sold the boom to Fallsway Equipment Company; it was installed on an International Harvester truck and Fallsway sold the truck to Creech's employer.

The Creeches' complaint contained three counts; count one alleged REMC negligently installed and maintained its power lines; count two was a products liability claim against Dico alleging the boom was in a defective condition when it was initially sold and delivered to Fallsway Equipment Company and when it was sold to John's employer; count three alleged Dico had breached the implied warranty of fitness on its product.[1]

The trial court granted summary judgment in favor of Dico on March 4, 1982, and in favor of REMC on March 1, 1983. In relation to Dico, the trial court found that Creeches' products liability claim was barred by the ten-year statute of limitations in Indiana's Products Liability Act, IND. CODE 33-1-1.5-1 *et. seq.* and that

---

1. Counts two and three of Creeches' complaint originally included International Harvester Corporation and Fallsway Equipment Company as defendants. They are no longer parties.

their breach of warranty claim was barred by the four-year statute of limitations in IND. CODE 26–1–2–725. The trial court concluded that REMC had complied with the National Electric Safety Code provisions pertaining to the minimum elevation of power lines and therefore also concluded that REMC was not negligent.

On appeal, Creeches argue the trial court erred in granting Dico's motion for summary judgment because an affidavit supporting the motion was not based upon the affiant's personal knowledge and because discovery had not been completed.

Before responding to these issues, Dico argues Creeches' appeal should be dismissed because the praecipe and the record were untimely. This argument is based upon the premise that the trial court's decision to grant Dico's motion for summary judgment on March 4, 1982, was a final appealable judgment pursuant to Indiana Rules of Procedure, Trial Rule 56(C). T.R. 56(C) reads:

> A summary judgment upon less than all the issues involved in a claim or with respect to less than all the claims or parties shall be interlocutory *unless the court in writing expressly determines that there is no just reason for delay and in writing expressly directs entry of judgment* as to less than all the issues, claims or parties. (emphasis added).

The trial court's judgment entry reads:

> The Defendant, Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation, having filed its Second Motion for Summary Judgment, the Court having been briefed on said Motion and having made Findings of Fact and Conclusions of Law, now GRANTS said Motion.
>
> *There being no just reason for delay, this Court now expressly directs that a Judgment be entered in favor of* Defendant, Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation, and against

the Plaintiffs, John Allen Creech and Nancy Creech, with costs to be assessed against the Plaintiffs. (emphasis added).

Creeches contend the trial court's decision was interlocutory until almost a year later when the trial court granted REMC's motion for summary judgment on March 1, 1983. Creeches argue the "boiler plate" language from T.R. 56(C) that the trial court used in its entry was insufficient to certify the decision as a final appealable judgment. They argue that the trial court was required to make specific findings explaining its reasons for certifying the decision and that its failure to make findings constituted an abuse of discretion.

Creeches primarily rely on two cases to support their argument. *Allis-Chalmers v. Philadelphia Electric Co.,* (3rd Cir.1975) 521 F.2d 360 and *Fender v. Herald-Times, Inc.,* (1969) 145 Ind.App. 575, 251 N.E.2d 843. In *Allis-Chalmers,* the court of appeals held that under Fed.R.Civ.P. 54(B) a district court must make a "brief reasoned statement" in support of its decision to certify a partial judgment for appeal. The court of appeals reasoned that an explanation would facilitate meaningful review of a certification and would indicate whether the district court had considered the appropriate criteria in reaching its decision. The court of appeals noted the following relevant factors:

> In reviewing 54(b) certifications, other courts have considered the following factors, inter alia: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending upon the facts of the

particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b)

521 F.2d at 364.

Creeches cite *Fender* for the proposition that T.R. 56(C) must be read in relation to Ind. Rules of Procedure, Trial Rule 54(B). Then by analogy to Fed.R.Civ.P. 54(B) and *Allis-Chalmers*, they conclude a trial court must make specific findings to support certification of a partial summary judgment.

■■■ We have no quarrel with the idea that T.R. 56(C) and T.R. 54(B) are interrelated. *See, Stanray Corporation v. Horizon Construction, Inc.*, (1976) 168 Ind. App. 164, 342 N.E.2d 645. The language pertaining to certification of a partial judgment in both rules is identical. *Id.* We are also aware that federal law provides guidance for interpreting our trial rules, particularly T.R. 54(B). *Geyer v. City of Logansport*, (1974) Ind.App., 317 N.E.2d 893. Absent a "certification" by the trial court, a partial judgment pursuant to T.R. 54(B) is an interlocutory order and is not appealable unless it falls within the parameters for certification of an interlocutory appeal. *Id.* This requirement also applies to T.R. 56(C) and partial summary judgments. *Stanray Corporation v. Horizon Construction, Inc., supra.* However, the certification in the case at bar is sufficient even if we assume *Allis-Chalmers* is applicable.

■■ The court of appeals in *Allis-Chalmers* was concerned with insuring meaningful review of the trial court's decision. Examining the factors to which the court

of appeals alluded, *infra*, it is also apparent the court was concerned with maintaining its proper role by avoiding unnecessary, advisory, or duplicitous appellate decisions. Phrased differently, the court was concerned with whether a distinct part of the litigation had been adjudicated rather than a single issue within a claim. Under the federal rules a trial court is not permitted to certify a partial summary judgment for appeal when less than all the issues of a claim have been adjudicated. 3 W. HARVEY INDIANA PRACTICE § 56.9 at p. 559 (1970); 10 WRIGHT, KANE, MILLER FED.PRAC. & PROC. § 2656–2659, 2715 (1983). Although the case was decided before the adoption of our current trial rules *Fender, supra*, illustrates the application of this restriction by our state courts.

In *Fender*, the plaintiff brought a two count wrongful death complaint against two defendants. The trial court granted summary judgment in favor of one defendant on count one which was based upon *respondeat superior.* Count two, based upon common law negligence, was still pending against both defendants. When the plaintiff attempted to appeal, the court of appeals held that the purported summary judgment was not a final appealable judgment because it did not determine all the rights and liabilities of the parties in a distinct or definite branch of the litigation.

■■ In the case at bar, the trial court's entry certifying the judgment in Dico's favor must be read in context with the trial court's findings of fact and conclusions of law.[2] *See, Stanray Corporation v. Hori-*

---

2. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Defendant, Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation, having heretofore filed its Second Motion for Summary Judgment, and the Court having been briefed on said motion, and being duly advised in the premises, now makes the following findings of fact:

1. On April 10, 1981 the Plaintiffs filed an Amended Complaint against the Defendant, Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation.

2. Plaintiffs' first cause of action of said Amended Complaint does not apply to the Defendant, Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation.

3. In Plaintiffs' second cause of action and third cause of action they allege that the Defendant, Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation, manufactured a defective boom and component parts not fit for its intended purpose, and which defect and unfitness proximately caused the Plaintiffs' injuries.

*zon Construction, supra.* Although these findings were entered to support summary judgment, they also provide a basis for meaningful review of the certification decision. The summary judgment entered on March 4, 1982, clearly disposed of a distinct branch of the litigation. Creeches' claims against Dico were based upon legal theories and factual issues distinct from their claim against REMC. Review of the Dico judgment would not have duplicated review of the judgment in REMC's favor. Any potential decision related to REMC would not have rendered issues related to Dico moot. Therefore, we conclude the judgment granted in Dico's favor on March 4, 1982, was a final appealable judgment and Creeches were required to perfect their appeal from that date.

Creeches filed the entire record of proceedings on September 1, 1983. The portion of the record pertaining to Dico was untimely pursuant to Ind. Rules of Procedure, Appellate Rule 3(B). Creeches filed a motion to correct errors in response to summary judgment in favor of Dico. The trial court denied this motion on May 28, 1982, and the record should have been filed within 90 days of that date. Therefore, we do not have jurisdiction to address Creeches' appeal from the judgment in favor of Dico. *Wadkins v. Thornton,* (1972) 151 Ind.App. 380, 279 N.E.2d 849.

4. Said boom and component parts were manufactured by Waterloo Unloader, Division of Greater Iowa Corporation and contained the Serial Number 6F0083.

5. Said boom and component parts were delivered to the initial purchaser of this equipment on June 7, 1963.

6. Plaintiffs' second cause of action against the Defendant, Dico Company, Inc. and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation, was couched in terms of products liability action sounding in strict liability in tort.

7. Plaintiffs' third cause of action of said Amended Complaint against the Defendant, Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation, was couched in terms of a breach of implied warranties.

8. Indiana's Products Liability Act, IC 34-4-20A-1, *et. seq.,* governs Plaintiffs' second cause of action of their amended complaint.

9. Section five of Indiana's Products Liability Act contains a statute of limitations requiring that any products liability action must be commenced within ten years after the delivery of the product to the initial user or consumer.

10. Plaintiffs' third cause of action is governed by Indiana's Uniform Commercial Code.

11. Section 725 of Indiana's Uniform Commercial Code contains a statute of limitations requiring that an action for breach of implied warranties must be brought within four years from the date of delivery of the product.

12. Plaintiffs have filed their second cause of action or their Amended Complaint more than ten years after the delivery of said boom and component parts to the initial purchaser.

13. Plaintiffs' second cause of action of their Amended Complaint against the Defendant, Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation, is barred by the statute of limitations contained within Indiana's Products Liability Act, IC 34-4-20A-5.

14. Plaintiffs have filed their third cause of action of their Amended Complaint more than four years after the tender of delivery of said boom and component parts.

15. Plaintiffs' third cause of action of their Amended Complaint against the Defendant, Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation, is barred by the statute of limitations contained within Indiana's Uniform Commercial Code, IC 26-1-2-725.

### CONCLUSIONS OF LAW

1. Plaintiffs' first cause of action does not apply to the Defendant, Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation.

2. Plaintiffs' second cause of action of their Amended Complaint against the Defendant, Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation, is barred by Section five of Indiana's Products Liability Act, IC 34-4-20A-5.

3. Plaintiffs' third cause of action of their Amended Complaint against the Defendant, Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation, is barred by Section 725 of Indiana's Uniform Commercial Code, IC 26-1-2-725.

4. The law is with the Defendant Dico Company, Inc., and Dico Company, Inc., Under the Assumed Name of Waterloo Unloader, Division of Greater Iowa Corporation, and against the Plaintiffs, John Allen Creech and Nancy Creech.

Let judgment be rendered accordingly.

DATED, this 4th day of March, 1982.

s/s Henry A. Pictor
Judge, Ripley Circuit Court

Creeches appeal the summary judgment in favor of REMC arguing a genuine issue of material fact existed as to whether REMC complied with safety regulations that set minimum height requirements for its electrical high voltage lines. Creeches also contend the trial court erred by refusing to qualify one of their witnesses as an expert.

The parties agree REMC was required to comply with either the National Electric Safety Code's provisions or the Rural Electrification Administration's regulations specifying the minimum height requirements for high voltage power lines. The N.E.S. Code required a minimum height of 20′ 9.8″ and the REA regulations required a minimum height of 21′. At the summary judgment hearing, Creeches introduced testimony from a civil engineer, Bassler, who stated the maximum possible contact point for the loading boom was at a height of 20′ 8″. REMC introduced evidence that the primary line in question was suspended at a minimum height of 23 feet at its spliced section on the day after the accident.

Creeches argue the maximum possible height at which the boom could have made contact, 20′ 8″, was below the minimum height requirements of either set of safety regulations. Although they have not specifically said so, they are arguing that an inference can be drawn that REMC had not complied with the safety regulations when the accident occurred.

Our standard of review for summary judgment is very familiar:

Under Ind.R.Tr.P. 56(C), a summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. If there is any doubt as to the existence of a factual issue, the motion should be resolved in favor of the non-mover. In ascertaining the existence of any doubt, the contents of all pleadings, papers and affidavits are liberally construed in favor of the non-movant. Summary judgment should not be granted if the facts give rise to conflicting inferences which would alter the outcome. Even though conflicting facts on some elements of a claim exist, summary judgment may be proper when there is no dispute or conflict regarding a fact which is dispositive of the action. (Citations omitted).

*Bridgewater v. Economy Engineering Co.,* (1984) Ind.App., 464 N.E.2d 14, 16.

At this point, we would be inclined to agree with Creeches' argument, but REMC presented additional evidence negating the inference of negligence. Bassler based his observations about the maximum possible contact point for the boom on conditions in existence on July 10, 1982. REMC offered evidence that the area underneath its line had been landscaped since the day Creech was injured and that the area was six inches higher than it had been on August 7, 1979. Adding six inches to Bassler's estimate raises the maximum possible contact point for the loading boom to a height of 21′ 3″. This distance is in excess of both the National Electric Safety Code and the Rural Electric Administration minimum height standards.

Creeches did not offer evidence to contradict REMC's explanation of landscaping changes and they were required to show a genuine factual issue existed after REMC negated the inference of negligence. *McCullough v. Allen,* (1983) Ind.App., 449 N.E.2d 1168. Although Creeches note in passing that a defendant's compliance with applicable industry regulations is not dispositive of the negligence issue, they have only alleged error on the basis that REMC did not comply with safety standards. Thus, as the issues were developed they do not support an inference REMC was negligent. The trial court did not err by granting summary judgment.

Creeches argue the trial court erred by failing to qualify Bassler as an expert witness. They assert he would have testified about safety standards. They have

not explained how his testimony would have bolstered their case; indeed we have been left to speculate about the content of his testimony. Because Creeches have not demonstrated harm from the trial court's ruling, we find no grounds for disturbing the trial court's decision.

Creeches' appeal pertaining to Dico is dismissed and summary judgment in favor of REMC is affirmed.

NEAL, P.J., concurs.

RATLIFF, J., concurs in part and dissents in part with separate opinion.

RATLIFF, Judge, concurring in part and dissenting in part.

I concur in the majority opinion that Creeches did not file the record timely insofar as they attempt to appeal the summary judgment in favor of Dico, Inc., and that that portion of this appeal should be dismissed.

I dissent from the majority opinion in affirming the summary judgment in favor of REMC. The evidence before the court supported an inference that REMC's line was below the minimum height mandated by the applicable code, thus a genuine issue of fact was presented. In determining that no genuine issue of fact exists, the majority has accepted REMC's evidence to the exclusion of the Creeches' evidence, thereby resolving a factual dispute. Such cannot be done in summary judgment proceedings. Rather, resolution of such factual issues is the sole prerogative of the trier of fact upon trial of the issue.

Therefore, I would reverse the summary judgment in favor of REMC.