CARRIER AGENCY, INC., and Gerald
D. Carrier, Defendants–Appellants,

v.

TOP QUALITY BUILDING PRODUCTS,
INC. and John Allen Creech,
Plaintiffs–Appellees.

No. 69A01–8705–CV–104.

Court of Appeals of Indiana,
First District.

Feb. 24, 1988.

Rehearing Denied April 19, 1988.

---

Peter G. Tamulonis, Lynn A. Francis, Kightlinger & Gray, Indianapolis, for defendants-appellants.

John J. Dornette, Votaw & Dornette, Lawrenceburg, for plaintiffs-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellants, Carrier Agency, Inc. and Gerald D. Carrier (hereinafter referred to collectively as Carrier), appeal a decision of the Ripley Circuit Court granting a new trial to plaintiff-appellees, Top Quality Building Products, Inc. (Top Quality) and John Allen Creech (Creech), after they had suffered an adverse jury verdict.

We reverse.

## STATEMENT OF THE FACTS

On August 7, 1979, Creech, while employed by Top Quality, was injured when a loading boom that he was operating touched a power line owned and maintained by Southeastern Indiana REMC, Inc. (REMC). The boom had been manufactured by Dico, Inc. (Dico) who sold it to Fallsway Equipment Company (Fallsway). The boom was then installed on an International Harvester truck by Fallsway who then sold it to Top Quality. After the injury, certain litigation ensued. In one action Creech sued REMC on a theory of negligent operation and maintenance of its power lines, and Dico on a 402A theory. Summary judgments were entered against him and in favor of both defendants in the Ripley Circuit Court by the Honorable Henry A. Pictor. These decisions were affirmed by this court in *Creech v. Southeastern Indiana REMC, Inc.* (1984), Ind. App., 469 N.E.2d 1237.

Creech further initiated a workmen's compensation proceeding before the Industrial Board against Top Quality, and received an award on May 27, 1981. The award, totaling $129,680.00, was filed in the Dearborn Circuit Court on June 21, 1981, and reduced to judgment on July 10, 1981, under IND.CODE 22-3-4-9 by which proceeding the award became a lien. However, Top Quality had no workmen's compensation insurance coverage. This fact is the central theme in this case.

On June 25, 1981, Top Quality brought this action against Midwestern Indemnity Company (Midwestern) and Carrier for breach of contract and negligence in failing to write the workmen's compensation insurance coverage as agreed to and ordered by Top Quality. Meanwhile, Creech and his wife brought an action against Fallsway as a third party tort-feasor for negligence and for breach of warranty which action was eventually settled. Five hundred dollars ($500.00) of that settlement was allocated to Creech on account of his injuries, and $17,500.00 was allocated to his wife for loss of consortium. Creech and his wife executed releases to Fallsway and dismissed their suit. At no time was Top Quality given notice nor was it consulted by Creech as to the Fallsway suit, settlement, or release. On March 26, 1982, Top Quality, in consideration of Creech's execution of a covenant not to execute on the workmen's compensation award, paid Creech $10,000.00 and assigned to him its cause of action against Midwestern and Carrier for the workmen's compensation award, retaining all other claims it had. Top Quality subsequently filed a motion to substitute Creech in this action as party plaintiff, but such motion was denied. However, Creech was permitted to intervene and filed his intervenor's complaint against Midwestern and Carrier for breach of contract and negligence in not writing the workmen's compensation insurance coverage.

Midwestern then filed a motion for summary judgment against both Top Quality and Creech claiming that Carrier was not its agent. The motions were granted, and the judgment in Midwestern's favor has not been appealed.

Carrier filed its motion for summary judgment against Top Quality and Creech based upon the claim that Creech's settlement with and release of the third-party tort-feasor, Fallsway, without notice or consultation with Top Quality, barred any further action against Carrier. This motion was likewise granted by the Honorable Henry A. Pictor in 1984, but was denominated only as a partial summary judgment.

A jury trial was held on January 20 and 21, 1987, on the issue of whether Carrier had agreed to write the workmen's compensation insurance and whether it had negligently failed to do so. This trial was before the Honorable Denver Gay, the successor to the Honorable Henry A. Pictor. Because of the existence of the partial summary judgment in favor of Carrier, the court excluded from evidence all material pertaining to the workmen's compensation award. Top Quality and Creech presented evidence that after Carrier agreed to write all of Top Quality's insurance, Top Quality transferred all of its insurance from Farm Bureau to Carrier. This consisted of multi-peril, auto fleet, and workmen's compensation coverage. Carrier wrote the multi-peril and the fleet coverage but not the workmen's compensation coverage. Carrier denied that it had agreed to write the workmen's compensation insurance coverage. The only evidence of damages was $7,000.00 in wages and medical bills paid by Top Quality to Creech. The jury returned a verdict for Carrier.

Creech and Top Quality filed their motion to correct errors. The trial court sustained portions of the motion and ordered a new trial. In its order it stated:

1. The decision of this Court of February 28th, 1983 by Judge Pictor, whereby Summary Judgment was granted in favor of Gerald D. Carrier and Carrier Agency, Inc., against intervening plaintiff, John Allen Creech, was contrary to law in that the defendants were not within the class of parties covered by the Indiana Workmen's Compensation Statutes; and, there was no election of remedies by John Allen Creech to support his dismissal from this cause on those grounds.

2. The decision of this Court by Judge Pictor of December 13th, 1984, whereby partial Summary Judgment was granted in favor of defendants, Carrier Agency, Inc. and Gerald D. Carrier, against Top Quality Building Products, Inc., was contrary to law in that the Indiana Workmen's Compensation Statutes were not applicable to the parties herein, that if they were there was no waiver or elec-

tion of remedies by Creech; and, further, that any election by Creech would not be imputed to Top Quality Building Products, Inc.

3. That the decision of the Court by Judge Pictor of October 11th, 1984, is rendered moot by the error of the previous summary judgment orders herein.

4. That as a result of the aforesaid summary judgments being in error the evidence tendered by plaintiffs at trial may become admissible in full or part as set out by paragraphs 5 (A) (B) and (C) of plaintiffs' Motion to Correct Errors.

5. The Court finds that defendants' Instruction Number 5 was unclear and misleading to the jury.

*Record* at 146–47.

### ISSUES

The issues are as follows:

I. Whether the trial court erred in setting aside the summary judgments previously granted to Carrier.

II. Whether the giving of Carrier's Instruction No. 5 was error.

### DISCUSSION AND DECISION

ISSUE I: *Summary Judgments*

The law in Indiana is settled that where an action is brought by an injured employee against a third party tort-feasor and a settlement is made and a release executed, the liability of the employer, or the employer's compensation carrier, to pay further compensation terminates. Additionally, the employer is entitled to subrogation for the amounts paid, or is entitled to a lien on the judgment received by the employee against the third party tort-feasor. IND.CODE 22–3–2–13; *Indiana State Highway Comm'n v. White* (1973), 259 Ind. 690, 291 N.E.2d 550; *Norris v. United States Fidelity and Guaranty Co.* (1982), Ind.App., 436 N.E.2d 1191; *McCammon v. Youngstown Sheet and Tube Co.* (1981), Ind.App., 426 N.E.2d 1360; *Koughn v. Utrad Industries, Inc.* (1971), 150 Ind. App. 110, 275 N.E.2d 572. The injured employee and his wife cannot negotiate a settlement to which the employer or his

insurance carrier is not a party, or is not notified, whereby a substantial portion of the total amount is allocated to loss of consortium in order to evade the statutory lien. Such arbitrary allocation is given no effect. *Dearing v. Perry* (1986), Ind.App., 499 N.E.2d 268. An employer's or insurer's right to recoup the amount paid does not depend on whether a full settlement between an employee and a third party tort-feasor was reached. *Norris, supra.* Therefore, it is clear that upon settlement and the execution of the release with the third party tort-feasor, Fallsway, Creech no longer had a viable claim against Top Quality on account of workmen's compensation benefits. Had workmen's compensation insurance existed, Creech would likewise have no further claim against Top Quality's insurer.

▪ It is also well settled in Indiana that an insurance agent who undertakes to procure insurance for another is an agent of the proposed insured and owes the principal a duty to exercise reasonable care, skill, and good faith in obtaining the insurance. If the agent undertakes to procure the insurance and through neglect fails to do so, he may be liable in an action for breach of contract or for negligent default in the performance of a duty imposed by contract. *Nahmias Realty, Inc. v. Cohen* (1985), Ind. App., 484 N.E.2d 617; *Stockberger v. Meridian Mutual Ins. Co.* (1979), 182 Ind. App. 566, 395 N.E.2d 1272; *Bulla v. Donahue* (1977), 174 Ind.App. 123, 366 N.E.2d 233. Generally, the measure of damages in such an action is the amount which would have been due under the policy had it been obtained. *Nahmias, supra; Bulla, supra.*

▪ From the above authorities, it is clear that when Creech settled his case with Fallsway, and released it, he released Top Quality as well from further obligation. Furthermore, if Top Quality had been covered by workmen's compensation insurance, such settlement would have released the insurance carrier as well. Top Quality, being released would not have had a cause of action against Carrier for the $129,680.00 workmen's compensation award because it had not incurred that amount as damages for the alleged failure on the part of Carrier to effect the workmen's compensation insurance coverage. Because Top Quality had no cause of action, it had nothing to assign to Creech.

▪ We are further of the opinion that Top Quality could not, by any collusive action with Creech, enhance its and Creech's rights against Carrier since the measure of damages is that which would have been due had the insurance been written. This would have included any defenses available to Top Quality, namely the settlement between Creech and Fallsway. A plaintiff is obligated to mitigate damages when a contract is breached or a tort has been inflicted by another party. *Colonial Discount Corp. v. Berkhardt* (1982), Ind. App., 435 N.E.2d 65; *Indiana Industries, Inc. v. Wedge Products, Inc.* (1982), Ind. App., 430 N.E.2d 419; *Salem Community School Corp. v. Richmond* (1980), Ind. App., 406 N.E.2d 269. Top Quality, by failure to assert its defense, could not create a cause of action upon assignment to Creech. Asserting a defense is a means of mitigating damages. An assignee, as a general rule, has no greater rights than the assignor. *Brown v. Indiana National Bank* (1985), Ind.App., 476 N.E.2d 888.

In conclusion, the trial court erred in setting aside the summary judgments in favor of Carrier. Supportive of this position is the rule that any potential error regarding damages is rendered harmless by a judgment in favor of the defendants. *Dettman v. Sumner* (1985), Ind.App., 474 N.E.2d 100. Here liability on the part of Carrier was fully litigated, and judgment was rendered for Carrier. The $129,680.00, which was kept out of evidence, was a matter of damages only.

ISSUE II: *Defendants' Instruction No. 5*

The trial court gave Carrier's tendered Instruction No. 5 which, as modified, reads as follows:

If you find by a preponderance of all the evidence that Gerald D. Carrier informed Robert Banschbach he was not writing Workman's Compensation Insurance, there was no contract and there was no duty on the party of Gerald D.

Carrier to provide Workman's Compensation Insurance for Top Quality Buildings Products.

*Record* at 432.

The trial court also gave Top Quality and Creech's Instruction No. 6A and 6B, which read as follows:

### FINAL INSTRUCTION 6A

If the agent undertakes to procure the insurance and through fault and neglect fails to do so, the agent or broker may be liable for breach of contract or for negligent default in the performance of a duty imposed by contract.

### FINAL INSTRUCTION 6B

Where an insurance agent or broker promises, or gives some affirmative assurance that he will procure or renew a policy of insurance under circumstances which lull the insured into the belief that such insurance has been effected, the law will impose upon the broker or agent the obligation to perform the duty which he has thus assumed.

*Record* at 433–34.

At trial Creech and Top Quality made the following objections to Carrier's Instruction No. 5:

Plaintiffs would object to uh defendant's instruction number five, (5) as modified for the reason, once again, that it does not accurately state the law, it has, it assumes facts at issue and provides a Jury with a suggested verdict.

*Record* at 360. However, in their motion to correct errors, they state:

Said instruction improperly states the law as the test is whether or not a contract was entered to procure said insurance; and it is totally unsupported by the facts as no evidence was presented that Carrier made this statement; and most importantly the instruction is mis-leading [sic] and confusing as there is conflicting evidence that Carrier made a statement that should not change Workman's Compensation insurers yet Top Quality later directed him to procure the policy and relied on him.

*Record* at 3.

On appeal Creech and Top Quality argue: (1) that when the insurance was written in

June of 1979, no mention was made of the fact that Carrier was not writing the workmen's compensation insurance; (2) the instruction excludes all other areas of liability; and (3) the instruction misleads the jury and negates and contradicts other instructions, namely plaintiff's 6A and 6B.

■ A party claiming error in the giving of an instruction is limited to his stated objection at trial. *Peavler v. Board of Comm'rs of Monroe County* (1986), Ind. App., 492 N.E.2d 1086; *Dettman, supra.* Instructions are to be considered as a whole. *Peavler, supra.* An objection to an instruction must be specific and distinct. Ind.Rules of Procedure, Trial Rule 51(C); *Dettman, supra; Peavler, supra.* An objection that instructions are confusing and misleading, or that the instruction is not a correct statement of the law is not a specific objection. *King's Indiana Billiard Co. v. Winters* (1952), 123 Ind.App. 110, 106 N.E.2d 713; *Powell v. Ellis* (1952), 122 Ind.App. 700, 105 N.E.2d 348. 1 *I.L.E. Appeals* § 95 (1957). We are of the opinion that the original objection is inadequate as a matter of law. However, other reasons exist to reverse the case on its merits.

■ A party is entitled to have an instruction based on his own theory of the case if it is within the issues and the evidence produced at trial fairly tends to support it. *State v. Edgman* (1983), Ind.App., 447 N.E.2d 1091. The only issue of the case concerning liability is whether or not Carrier agreed to and undertook to write the workmen's compensation insurance coverage. Top Quality presented evidence through its officer Robert Banschbach. Banschbach testified that he approached Carrier stating that he was interested in transferring all of his insurance from Farm Bureau to Carrier. This insurance package, according to Banschbach, included multi-peril, auto fleet, and workmen's compensation coverage. According to Banschbach's testimony, Carrier agreed to and undertook to write it all. Carrier testified that he and Banschbach met in April, 1979. Carrier testified:

Q. All right. And uh, what happened then?

A. ... during our ... conversation ... Mr. Banschbach was going ... through papers in his insurance file and uh handed me the workman's compensation policy that was with Farm Bureau and I looked at it and saw that the ... policy renewal date was in December, of Seventy Nine, ('79), I handed it back to him and explained well, I'm not, I'm preparing a quote on your auto insurance, so you have workman's compensation paid up to December Seventy-Nine, ('79) so just nothing worth discussing at this point. And I also pointed out that ... there can be penalties involved if you terminate workman's compensation in mid-term, so that was all that was discussed on that. I left his office ...

Q. What did you, what did you do with the policy then Mr. Carrier?

A. I returned it, handed it back to him.

Q. Just handed it back to him?

A. That's right.

Q. What was his response when you told him, when you gave him that information?

A. He acknowledged the fact of what I had said, and was no, no question about what what my statement had been and what our intent to do, you know, I indicated that on renewal date, we certainly would be, you know, happy ... to write the business ... on its renewal date.

*Record* at 285–86.

We view defendant's Instruction No. 5 as the antithesis to Creech and Top Quality's Instructions No. 6A and 6B. Those instructions informed the jury that if Carrier promised to write the insurance or undertook to do so, he could be liable. Instruction No. 5 merely said if he did not so promise, he was not liable. The instruction was not erroneous, and the giving of it is not reversible error. The instructions as a whole pose the question to the jury, who would in turn decide which party to believe.

From the foregoing, it is our opinion that the trial court erred in granting a new trial. The trial court is ordered to reinstate the original judgments for Carrier Agency, Inc. and Gerald D. Carrier.

Judgment reversed.

ROBERTSON, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I concur because the issue of liability on the part of Carrier for failure to provide workmen's compensation insurance was fully and fairly litigated and was determined adversely to Top Quality and Creech. All other issues are subsumed within this determination.

For this reason, I do not believe that it is necessary to decide, as does the majority, that there was a duty or opportunity on the part of Top Quality to assert a settlement-release defense before it paid the $10,000 to Creech. I also decline to join that part of the opinion which states that failure to assert a legal "defense" against efforts to enforce a judgment constitutes a failure to "mitigate damages." Maj.Op. at 743.