ANSERT MECHANICAL
CONTRACTORS, INC.,
Appellant–Defendant,

v.

Donald ANSERT, Appellee–Plaintiff.

No. 93A02–9706–EX–363.

Court of Appeals of Indiana.

Dec. 22, 1997.

Douglas J. Hill, Michael G. Getty, Alan J. Irvin, Hill Fulwider McDowell Funk & Matthews, Indianapolis, for Appellant–Defendant.

Peter J. Sewell, Louisville, KY, for Appellee–Plaintiff.

## OPINION

SHARPNACK, Chief Judge.

Ansert Mechanical Contractors, Inc. ("AMC") appeals the judgment of the Full Worker's Compensation Board (the "board") awarding worker's compensation benefits to Donald Ansert for injuries he sustained in an automobile accident. AMC raises two issues for our review, which we restate as:

1) whether Ansert settled his claim against a third party tortfeasor, thereby terminating AMC's obligation to pay worker's compensation benefits to Ansert; and

2) whether AMC is entitled to a lien on payments made to Ansert pursuant to an underinsured motorist policy held by AMC.

We affirm in part, reverse in part, and remand with instructions.

The relevant facts are not in dispute. On April 11, 1992, Ansert was involved in an automobile accident with William Adams. At the time of the accident, Adams was covered by a State Farm insurance policy with a liability limit of $100,000. The auto driven by Ansert in the accident was insured by AMC with Federal Insurance Company ("Federal"). This policy included $1,000,000 in underinsured motorist coverage ("UIM"). When State Farm offered the $100,000 limit of Adams' policy to Ansert, Federal advanced $100,000 to Ansert under the UIM policy to preserve its subrogation rights against Adams.[1] Federal also paid the remaining $900,000 of the UIM coverage into court which was later released to Ansert.[2] Federal collected and retained the $100,000 from State Farm. Ansert did not release his claim against Adams nor did he enter into any written settlement agreement with Adams. Ansert's third party claim against Adams is still pending in Clark Circuit Court.

After AMC's refusal to pay worker's compensation benefits, Ansert filed a claim with the board.[3] On October 18, 1996, a single hearing judge of the board issued an award requiring AMC to pay a total of $164,000 in disability and all of Ansert's past and future medical expenses. In addition, the judge awarded AMC a credit of $100,000 for the money already received by Ansert from Federal, which represented the limit of Adams' policy. On appeal, the board affirmed the award of the single hearing judge. AMC now appeals this judgment.

### I.

■ The first issue raised by AMC is whether there has been a settlement between Ansert and Adams such that AMC's obligation to pay Ansert worker's compensation benefits has terminated. AMC maintains that the payment of the $100,000 by Federal to Ansert constitutes an effective settlement between Ansert and Adams.[4] We disagree.

---

1. Pursuant to Ind.Code § 27–7–5–6, a UIM carrier is required to advance the tentative settlement amount to the insured to preserve its subrogation rights against the tortfeasor.

2. A dispute arose between Ansert and Federal regarding the interpretation of the UIM coverage. This dispute was resolved in a separate appeal in which we held in an unpublished memorandum decision that Ansert was entitled to a total of $1,000,000 from Federal under the UIM policy rather than the $1,000,000 plus the $100,000 received from Adams' policy. *See Ansert v.*

*Adams,* No. 10A01–9409–CV–314, 650 N.E.2d 771, June 2, 1995.

3. AMC's worker's compensation insurance policy is also with Federal.

4. AMC also asserts that Ansert has chosen option two under paragraph three of I.C. § 22–3–2–13, which involves the employee assigning the judgment to the employer and continuing to collect the worker's compensation benefits to which he is entitled. However, this section only applies when "the employee has secured a final judgment from the third party." *Id.* Because there

■ Section thirteen of the Worker's Compensation Act ("the Act") provides that an injured employee may institute an action against a person who has a legal liability to pay damages for the injury. However,

> "if the action against the other person is brought by the injured employee or his dependents and judgment is obtained and paid, and accepted *or settlement is made with the other person,* either with or without suit, then from the amount received by the employee or dependents there shall be paid to the employer or the employer's compensation insurance carrier the amount of compensation paid to the employee ... and *the liability of the employer or the employer's compensation insurance carrier to pay further compensation or other expenses shall thereupon terminate....*"

I.C. § 22–3–2–13 (emphasis added). In other words,

> "[t]he law in Indiana is settled that where an action is brought by an injured employee against a third party tort-feasor and a settlement is made and a release executed, the liability of the employer, or the employer's compensation carrier, to pay further compensation terminates. Additionally, the employer is entitled to subrogation for the amounts paid, or is entitled to a lien on the judgment received by the employee against the third party tort-feasor."

*Carrier Agency, Inc. v. Top Quality Bldg. Products, Inc.,* 519 N.E.2d 739, 742 (Ind.Ct. App.1988), *reh'g denied, trans. denied; see also McCammon v. Youngstown Sheet & Tube Co.,* 426 N.E.2d 1360, 1363 (Ind.Ct.App. 1981). A settlement is defined as "an agreement to terminate or forestall all or part of a lawsuit." *Harding v. State,* 603 N.E.2d 176, 179 (Ind.Ct.App.1992), *trans. denied.*

In this case, the parties have stipulated that Ansert has neither released his claim against Adams nor has he entered into any written settlement agreement with Adams. Nevertheless, AMC contends that "[f]or all practical purposes," Ansert settled with Adams when he received the $100,000 from Federal. Appellant's brief, p. 7. However, the money accepted by Ansert from Federal was in lieu of settlement with Adams. Ansert was simply following the procedure set forth under Federal's UIM policy and I.C. § 27–7–5–6, allowing Federal to preserve its subrogation rights. Although AMC asserts that Ansert has "no intention of pursuing Mr. Adams further," such intentions do not constitute an agreement to terminate the action against Adams.[5] Appellant's brief, p. 7. In fact, Ansert's civil action against Adams is still pending in Clark Circuit Court.[6]

Furthermore, the apparent purpose behind the termination provision of section thirteen is to prevent injured employees from settling with a third party, thereby cutting off the opportunity of a worker's compensation carrier to pursue the liable party to recover any benefits it has paid. Here, Ansert's acceptance of the $100,000 from Federal did not in any way preclude AMC from pursuing Adams in recovering any worker's compensation benefits it pays to Ansert. Therefore, we conclude the board correctly determined that, under I.C. § 22–3–2–13, Ansert had not settled his claim against Adams such that his worker's compensation benefits have terminated.

## II.

■ Next, we must consider whether AMC is entitled to a lien on the $900,000 paid to Ansert by Federal pursuant to the UIM policy. AMC contends that the express lan-

---

was no final judgment procured by Ansert in his action against Adams, this section does not apply to the matter before us.

5. We also note that although we cannot determine from the record if Federal in some way released a part of the claim against Adams or State Farm when it collected the $100,000 policy limit, such circumstances would still not constitute a settlement on the part of Ansert that would preclude his collection of worker's compensation benefits.

6. AMC also cites *Carrier* to support its contention that there is a settlement agreement between Ansert and Adams. *Carrier,* 519 N.E.2d 739. However, in *Carrier,* we did not address the existence of a settlement, but whether proceeds from a settlement allocated to a loss of consortium claim would be subject to the lien allowed to a worker's compensation carrier by the statute. *Id.* Thus, we do not find this case applicable to the issue before us.

guage of the Act authorizes such a lien. The first paragraph of the section authorizes the injured employee to commence legal proceedings against "some other person than the employer and not in the same employ [who has] a legal liability to pay damages...." I.C. § 22–3–2–13. When the employee brings such an action, paragraph four provides that "the employer or the employer's compensation insurance carrier shall have a lien upon any settlement award, judgment or fund out of which the employee might be compensated from the third party." *Id.* Thus, we must determine if a UIM payment qualifies for such a lien under this statutory language.

■ In interpreting the language of a statute, we presume that words appearing in the statute were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Indiana Dept. of Human Services v. Firth,* 590 N.E.2d 154, 157 (Ind.Ct.App.1992), *trans. denied.* A statute should also be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. *State v. Windy City Fireworks, Inc.,* 600 N.E.2d 555, 558 (Ind.Ct.App.1992). In doing so, the objects and purposes of the statute in question must be considered, as well as the effect and consequences of such interpretation. *Id.*

AMC asserts that Federal, as the UIM insurer, is "some other person" with "a legal liability to pay damages" because it has a contractual obligation to pay Ansert for damages not paid by the tortfeasor. I.C. § 22–3–2–13. Ansert, on the other hand, contends that the "other person" is limited to the tortfeasor and, thus, payments made by AMC's UIM carrier would not qualify for a lien. However, based on the plain language of the statute, we find nothing that expressly limits the phrase "other person" to the tortfeasor. Had the legislature intended such a limitation, it could have easily done so with slight modification to the wording of the statute.

However, Ansert points to several Indiana cases that refer to the third party as the tortfeasor. Although we agree that in most cases the third party is, in fact, the tortfeasor, we do not agree that these cases limit the third party to the tortfeasor alone. Thus, we must refocus our inquiry on the plain language of the statute.[7]

Aside from the employer or someone "in the same employ," the only express limitations we find as to who might qualify as a third party is that such party must have a "legal liability to pay damages."[8] I.C. § 22–3–2–13. In addressing the meaning of this phrase, we must first note that there is a distinction between a legal liability to pay for damages that have accrued and the liability that attaches directly to a party for its negligent act. In other words, a tortfeasor may have a liability for damages she causes, but her insurance carrier under the insurance contract, has a contractual liability to pay for

7. In addition, Ansert cites worker's compensation cases in other states holding that the third party is limited to the tortfeasor. However, many states have statutes that by their express language limit the third party to the tortfeasor, the negligent party or the party who actually caused the injury. *See, e.g., Travelers Ins. Co. v. National Farmers Union Prop. & Cas. Co.,* 252 Ark. 624, 480 S.W.2d 585, 588 (1972). (basing its holding on the Arkansas statute which specifies that subrogation by employer based on employee's right to bring "action in tort" against third party); *Sunstate Equipment Corp. v. Industrial Comm'n of Arizona,* 135 Ariz. 477, 662 P.2d 152, 153 (Ct.App.1983) (relying on Arizona statute which states, "if employee . . . is injured or killed by the negligence or wrong of another . . . such injured employee may pursue his remedy against such other person"); *March v. Pekin Ins. Co.,* 465 N.W.2d 852, 854 (Iowa 1991) (noting that Iowa statute specifically defines "damages" as payment by any third party "causing" injury to an employee). Because Indiana's statute does not expressly limit the third party to the tortfeasor, we do not find these cases instructive in interpreting Indiana's statute.

8. Ansert asserts that the language excluding "someone in the same employ" from the class of persons that the injured employee may pursue indicates the legislature's intent to limit the third party to the tortfeasor. However, the wording of this portion of the statute merely preserves the right of the injured employee to pursue an action against a party as long as they are not either the employer or a co-employee. Thus, the statute does not, by its express language, limit an injured employee's ability to pursue a UIM carrier for damages not paid by the tortfeasor.

those damages. As such, we must next determine whether Federal's payment under the UIM policy qualifies as "a legal liability to pay."

Ansert contends that this language refers only to a tort liability to pay. *Id.* However, as noted above, a contractual obligation to pay on a UIM policy is a legal liability to pay and, again, we find no express language in the statute that would limit the legal theory under which the liability to pay may arise. Therefore, the more dispositive issue is whether the payment pursuant to the UIM policy constitutes a payment for "damages."

AMC maintains that UIM payments are "damages" because they are paid as a substitute for the damages owed, but not paid, by the tortfeasor. On the other hand, Ansert argues that payments under a UIM policy are not "damages" because they are not paid by the tortfeasor. Because this is a question of first impression in Indiana, we turn to the case law of other states for insight.

In a case remarkably similar to the one before us, the Vermont Supreme Court held that payments under a UIM policy did constitute damages for the purpose of Vermont's worker's compensation act. *Travelers Companies v. Liberty Mutual Ins. Co.*, 164 Vt. 368, 670 A.2d 827, 830 (1995). The court looked to its UIM statute in an effort to determine if UIM payments were "damages" for the purpose of Vermont's worker's compensation act. *Id.*, 670 A.2d at 830. The court concluded that such payments were damages in Vermont because both the UIM statute and the UIM policy itself referred to the proceeds as damages.

The same is true in Indiana. Indiana's UIM statute refers to such coverage as that which "provides protection of persons insured under the policy who are legally entitled to *recover damages* from owners or operators of uninsured or underinsured motor

vehicles...." I.C. § 27–7–5–2(a)(1) (emphasis added). In essence, UIM coverage pays the damages not paid by the responsible party. Despite the fact that the proceeds are coming from a UIM carrier rather than the tortfeasor's insurance company, the money is still being paid for "damages" incurred by the insured. Further, this view is "reinforced by the insuring agreement of the UIM policy, which obligates the UIM carrier to pay all sums the insured is entitled to *recover as damages* from the owner or insurer of the underinsured vehicle." *Travelers*, 670 A.2d at 830 (emphasis added). Therefore, it appears that under both Indiana insurance law and the UIM policy itself,[9] payments made pursuant to UIM coverage are considered "damages" in Indiana for the purposes of the Act.

■ Furthermore, the clear policy underlying the lien provision of the statute supports our conclusion that such payments would constitute "damages." The purpose of the lien is to prevent double recovery on the part of the injured employee. *Freel v. Foster Forbes Glass Co.*, 449 N.E.2d 1148, 1151 (Ind.Ct.App.1983). In light of this policy, we find no reason to distinguish between damages paid by a tortfeasor or the tortfeasor's insurance carrier and damages paid by a UIM carrier when the tortfeasor lacks sufficient coverage to fully compensate the injured employee. In essence, uninsured motorist benefits are merely a contractual substitute for funds that would have been available if the tortfeasor had been fully insured. "Although uninsured motorist coverage is provided for the protection of persons injured by uninsured or underinsured tortfeasors, and not for the benefit of such wrongdoers, the statutorily specified coverage guarantees the injured person's recovery of damages as if the tortfeasor had been insured." *See Johnson v. Fireman's Fund*

---

9. Although AMC failed to include a copy of the UIM policy in the record for our review, we did find a passage of the UIM policy quoted in a copy of the unpublished memorandum decision *Ansert v. Adams*, No. 10A01–9409–CV–314, June 2, 1995, which was included in the record. The section of the UIM policy quoted in the memorandum decision was from the "Limit of Insurance" section and provided as follows:

"'3. Any amount payable for *damages* under this coverage shall be reduced by all sums paid or payable under any worker's compensation, disability benefits or similar law ...'"

Record, p. 64 (emphasis added). This language shows that the AMC's UIM policy treats the payments made under the policy as "damages" and is consistent with the provisions of I.C. § 27–7–5–2(a)(1).

*Ins. Co.*, 425 So.2d 224, 227 (La.1982), *reh'g denied.*

The primary goal of the policy is to prevent double recovery. As such, it would not further the purpose of the lien provision to interpret the statute in such a way that a worker's compensation carrier would be reimbursed if the damages are paid out of the tortfeasor's insurance, but not if paid out of the UIM coverage.

However, Ansert argues that if we conclude that UIM payments are damages and subject to a lien, then there is nothing to prevent a lien against payments made to the injured employee from disability insurance, group medical insurance, social security disability benefits and life insurance. However, payments made to the employee under these policies would not constitute a payment for "damages" as would payments under a UIM policy. Payments made pursuant to disability or medical insurance policies do not depend on the negligent acts of another person. Such payments would merely be triggered by a medical need alone, regardless of the cause, whereas payments under a UIM policy or the tortfeasor's liability policy are made because a tort liability has been established. Therefore, Ansert's assertion that our interpretation would subject such funds to a lien is not a cause for concern.

In conclusion, we hold that payments made to an injured employee under a UIM policy would constitute payment for "damages" such that an employer or worker's compensation carrier is entitled to a lien on those proceeds pursuant to I.C. § 22–3–2–13. Therefore, we remand with instructions for the board to apply a lien against the $900,000 received by Ansert from Federal. As such, any worker's compensation benefits owed to Ansert are to be paid after the $900,000 has been exceeded. In addition, pursuant to paragraph eight of I.C. § 22–3–2–13, the lien must be reduced by the amount of any expenses and attorney's fees incurred by Ansert in pursuing the recovery of the $900,000.

On cross-appeal, Ansert challenges the $100,000 credit given to AMC by the board.[10] The single hearing judge ordered that the "defendant is entitled to a credit of $100,000.00 against this amount reflecting payments received from the intoxicated driver's insurance carrier." Record. p. 28. Ansert argues that this credit was erroneous because this money was paid to him by Federal and not directly by the tortfeasor. However, this argument is one of semantics. Whether Ansert received it directly from Adams' insurance carrier or, as here, from Federal in an attempt to preserve its subrogation rights, the money still represented the policy limits of Adams' liability coverage. Even if we were to conclude that the $100,000 were a payment under the UIM coverage, the result would be the same because, as discussed previously, payments made pursuant to a UIM policy are subject to the statutory lien. Thus, we affirm the award of the $100,000 credit.

Therefore, to the extent that the board found that there had been no settlement by Ansert and that AMC was entitled to the $100,000 credit, we affirm the award. However, to the extent that the board failed to award a lien to AMC against the $900,000 paid pursuant to the UIM policy, we reverse and remand with instructions.

For the foregoing reasons, we affirm in part, reverse in part, and remand with instructions.

Affirmed in part, reversed in part, and remanded with instructions.

BARTEAU and HOFFMAN, JJ., concur.

---

**10.** Ansert also requests that, pursuant to I.C. § 22–3–4–8, we increase his award by 10%, rather than the automatic 5% if we were to affirm the worker's compensation award. However, because AMC was successful on the applicability of a lien to the UIM payment, we do not apply the statutory award increase.